556 So.2d 690 (1990)
Cherie Lynn GRAFE
v.
William OLDS and Donna Olds.
No. 07-CA-59572.
Supreme Court of Mississippi.
January 17, 1990.
Richard J. Lee, Hernando, for appellant.
Drue D. Birmingham, Jr., Olive Branch, for appellees.
Before DAN M. LEE, P.J., and PRATHER and BLASS, JJ.
DAN M. LEE, Presiding Justice, for the Court:
Cherie Grafe, the natural mother of the child in question, attempted to revoke her consent to the adoption of this child by other family members. She appeals from a Final Decree of Adoption against her and *691 Change of Name entered May 19, 1988 in DeSoto County, Mississippi, Finding no reversible error, we affirm.

A.
This appeal involves the members of one family. The parties are referred to according to their relationship with appellant, Cherie, as follows:

Thomas Taylor ...... grandfather
Christine Taylor ... although technically
 the step-grandmother,
 she is referred to
 herein as the grandmother
Jean Grafe ......... mother
Donna Olds ......... although technically
 the step-aunt, referred
 to herein as the aunt
William Olds ....... uncle-by-marriage, referred
 to herein as uncle

B.
On April 12, 1986, Cherie Grafe, an unwed minor, gave birth. Upon release from the hospital, Cherie and her baby stayed at the home of her grandparents, Thomas and Christine Taylor for approximately two (2) weeks. During this period Christine Taylor, a former nurse, helped care for the child and instructed Cherie in the proper care of her child. Thereafter Cherie and her child returned to the home of Jean Grafe, Cherie's mother.
The next eight (8) months were tumultuous. Cherie, a high school dropout who was attempting to get her GED, had great difficulty obtaining steady employment. She began receiving government assistance. She often lived with friends rather than at her mother's, leaving her child in the care of the Taylor's and Jean Grafe. Cherie's parenting skills were weak. The Welfare Department was alerted to the possibility of neglect and began monitoring the situation. William and Donna Olds extended an offer to adopt the child, which was refused.
The situation climaxed on the afternoon of January 12, 1987 when a family member found the child wet, dirty, crying and alone in the home of Jean Grafe. The following day, January 13, 1987, Thomas and Christine Taylor took the child to their home. That same day the Welfare Department was contacted twice: once by Christine Taylor saying she could no longer care for the child and once by Donna Olds expressing a desire to adopt the child. The Welfare Department contacted Cherie. Cherie said she would like the family to keep the child until she got settled with a job and home, but she did not want her child adopted by her aunt and uncle; she wanted to keep her baby.
A family meeting was called the evening of January 14, 1987 in the home of Thomas and Christine Taylor to decide what to do about the child. Initially everyone in the family was present except Jean Grafe and Cherie. Jean Grafe appeared at the meeting and was told by the family that William and Donna Olds wanted to adopt the child. Jean became extremely upset, told the family to talk with Cherie and left the meeting.
Cherie eventually came to the meeting. At this time William and Donna Olds told her that the child would be better off with them, that they wanted to adopt her baby, that the adoption would keep the Welfare Department from taking her child, and that she could see the child when she wished. Cherie agreed to the adoption. William Olds immediately contacted his attorney and arranged to have adoption papers prepared for execution the following day.
On the morning of January 15, 1987, Cherie Grafe went to the home of her aunt and uncle, Donna and Williams Olds. During the next several hours the baby's belongings were retrieved from the home of Jean Grafe as the Olds prepared to receive the child. At 4:00 on the afternoon of January 15, 1987 William and Donna Olds, their two (2) children, and Cherie Grafe went to the law offices of William's attorney.
Upon arrival William, Donna and Cherie met with the attorney's secretary; the attorney was in court and did not appear. They were presented with the following papers: Complaint for Adoption, Consent to Adopt with accompanying Affidavit, and Judgment of Adoption. Everyone reviewed the papers. Cherie pointed out typing *692 errors and questioned the necessity for name change contained in the Complaint. Cherie did not ask for, nor was she offered an attorney or an opportunity to take the papers to an attorney. All parties signed the papers; Cherie was not given copies.
After the papers were signed, William and Donna Olds, their children and Cherie returned to the Olds' residence. At this time William and Donna Olds took custody of the eight (8) month old baby and immediately changed the child's name.
Three days later, January 18, 1987, Jean Grafe learned of the visit to the attorney's office and signing of the adoption papers. Jean Grafe was upset and contacted Cherie. Within a week both Jean Grafe and Cherie decided to contest the adoption and sought counsel of their own.
Cherie returned to the Olds home to visit with her child on February 2, 1987 and May 8, 1987. She called the Olds on February 16, 1987, but did not arrive for a visit. On June 1, 1987 William and Donna Olds restricted Cherie's visits: visitation was not allowed without 24 hour notice, and then only if both William and Donna Olds were present, the visits could only last 30 minutes, and Cherie was not allowed to bring friends with her. Between June 1, 1987 and the hearings in this case, Donna Olds testified that Cherie called 12 times to visit and actually visited 7 of those 12 times. William Olds testified that Cherie was denied visitation on June 4, 5, 10, 25, 1987 and August 12, 1987.
The Complaint for Adoption, Consent to Adoption with accompanying Affidavit and Affidavit of Physician were filed with the Clerk of the Chancery Court of DeSoto County, Mississippi on January 21, 1987. Jean Grafe and Cherie, through counsel, filed an Answer to Petition for Adoption contesting the Complaint on February 24, 1987. William and Donna Olds filed their Response to the Answer on March 27, 1987. An Order of continuance was entered May 7, 1987.
Sometime after April 28, 1987, Cherie revealed the name of the father of her child. Counsel for the Olds petitioned the court for leave to amend the complaint to include the name of the natural father on June 5, 1987. Permission to amend the complaint was granted and the case was continued on June 11, 1987. Process was served on the natural father, but he made no appearance in the case. Thereafter, the case was continued on the following dates: July 20, 1987, September 17, 1987, and September 18, 1987.
Hearings were held on the Complaint on October 10, 1987, December 11, 1987 and April 6, 1988. The Chancellor rendered his opinion granting the adoption from the bench on April 6, 1988, approximately 14 months after the placement of the child and filing of the original petition. The Chancellor found: (1) Williams v. Pope, 281 Ala. 416, 203 So.2d 271 (1967) was controlling law; (2) a valid consent was given; (3) there was no valid reason to allow withdrawal of consent; (4) the natural mother physically and legally abandoned the child upon the signing of the consent in accordance with Miss. Code Ann. § 93-17-5 and Bryant v. Cameron, 473 So.2d 174 (Miss. 1985); (5) the best interest of the child is paramount, requiring the adoption and name change in this case. The Final Decree of Adoption and Change of Name incorporating the bench opinion was entered May 19, 1988. Cherie Grafe filed her notice of appeal June 16, 1988.

STANDARD OF REVIEW
This Court will not overturn a Chancellor's findings of fact when supported by substantial evidence unless an erroneous legal standard is applied or is manifestly wrong. Johnson v. Hinds County, 524 So.2d 947, 956 (Miss. 1988), Gibson v. Manuel, 534 So.2d 199, 204 (Miss. 1988); Bell v. City of Bay St. Louis, 467 So.2d 657, 661 (Miss. 1985). If a Chancellor fails to make findings of fact on issues of fact, this Court assumes that the issues were resolved in favor of the Appellee. Bryant v. Cameron, 473 So.2d 174, 179 (Miss. 1985). In a bench trial, the trial judge has sole authority to determine the credibility of the witnesses. Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1265 (Miss. 1987).
*693 Cherie assigns two errors for review. We do not reach the second assignment because it ignores this Court's limited standard of review. We turn now to the assignment at issue.

ASSIGNMENT OF ERROR
Whether or Not a Consent for Adoption by Parent, Once Given, May be Revoked Prior to Adoption Decree, and if so, Under What Circumstances?

A.
This assignment presents a question of first impression for this Court: revocation of consent by a natural parent in a private adoption prior to entry of a decree of adoption fourteen months after the child has been placed with the prospective adoptive parents. Since adoption is a statutory creature, we turn first to our statutes for guidance.

B.
Parental objections to adoption procedures is dealt with in Miss. Code Ann. § 93-17-7, entitled "Objection of parent  termination of unfit parents' rights" which reads:
No infant shall be adopted to any person if either parent, after having been summoned, shall appear and object thereto before the making of a decree for adoption, unless it shall be made to appear to the court from evidence touching such matters that the parent so objecting had abandoned or deserted such infant or is mentally, or morally, or otherwise unfit to rear and train it, including, but not limited to, being within any of the grounds requiring termination of parental rights as set forth in subsections (2) and (3)(a), (b), (d) or (e) of Section 93-15-103 in either of which cases the adoption may be decreed notwithstanding the objection of such parent, first considering the welfare of the child, or children, sought to be adopted. Provided, however, the parents shall not be summoned in the adoption proceedings nor have the right to object thereto if the parental rights of the parent or parents have been terminated by the procedure set forth in Sections 93-15-101 through XX-XX-XXX, and such termination shall be res judicata on the question of parental abandonment or unfitness in the adoption proceedings.
(emphasis added).
Termination of parental rights is governed by Miss. Code Ann. § 93-15-101 through § 93-15-111. Chapter 15 is entitled, "Termination of Rights of Unfit Parents Law." § 93-15-109 provides that termination of parental rights may be done after hearing with clear and convincing proof that parents meet the grounds requiring termination found in chapter 15. Written consent is one ground for termination of parental rights and is covered in subsection 2 of § 93-15-103:
(2) The rights of a parent with reference to a child, including parental rights to control or withhold consent to an adoption, and the right to receive notice of a hearing on a petition for adoption, may be relinquished and the relationship of the parent and child terminated by the execution of a written voluntary release, signed by the parent, regardless of the age of the parent.

(emphasis added).
Another ground for termination of parental rights is abandonment of the child. See § 93-17-7 supra. This Court addressed the term "abandonment" in Bryant v. Cameron, 473 So.2d 174 (Miss. 1985):
Abandonment does not necessarily refer to some overall course of conduct as "desertion" would, but rather "abandonment" may result from a single decision by a parent, at a particular point in time, where that parent decides to relinquish parental claims. For instance, when after the three day waiting period a parent signs the paper to renounce all rights in the child and place him or her for adoption, at that moment the parent may be said to have abandoned that child. One does not need to wait and see if the natural parent will make overtures to visit the child that has been placed up for adoption before declaring *694 that "abandonment" has taken place.

Id. at 178 (emphasis added).
In accordance with the plain reading of the foregoing statutes and judicial interpretations thereunder, a written voluntary release, or consent by the parent, [§ 93-15-103(2)] terminates the parental rights and thereafter, no objection to the adoption from the natural parent may be sustained. [§ 93-17-7]. The first question to be answered is whether the written release, or consent, in the case sub judice was voluntary and resulted in the termination of Cherie's parental rights. The trial Court, relying on Williams v. Pope, 281 Ala. 416, 203 So.2d 271 (1967) and Bryant v. Cameron, supra, found that the consent was voluntary and the child had been physically and legally abandoned by Cherie. Under our standard of review we find no error in this determination. This assignment of error is rejected.

C.
The next question is: May that valid consent be revoked? Mississippi dealt with the revocation of parental consent in public adoptions in the case of C.C.I. v. Natural Parents, 398 So.2d 220 (Miss. 1981). This Court held:
Absent a showing by the parent(s) establishing either fraud, duress, or undue influence by clear and convincing evidence, surrenders executed in strict compliance with the safeguard provision of § 93-17-9, supra, are irrevocable. Strong policy reasons support such a holding. If a parent is allowed unrestricted right to challenge his act of surrender, uncertainty and confusion among adoption agencies would undoubtedly result, making placement more difficult which would be detrimental to the children involved as well as to the public welfare. The statutory safeguards are themselves sufficient to guard against a hastily made decision.
* * * * * *
Revocability of the surrender of a child and consent for another to adopt a child is not to be decided upon rigid or technical rules. Such a decision must be made upon sound judicial discretion. Here revocation was asserted by the natural parents upon the grounds of undue influence and duress, but the testimony in that regard was less than clear and convincing.
* * * * * *
Different lines of cases on the revocability issue are discussed in Chapter Eighteen, § 18.4, Clark's Law of Domestic Relations (1968) Hornbook Series. Clark at page 626 states that "Whether consent may be revoked is to be determined initially by the applicable statute." Here we think that under our statute § 93-17-9, supra, revocation can be allowed but only where sufficient legal grounds are established by clear and convincing testimony, and such evidence is lacking here. Consent is not to be arbitrarily withdrawn.
Id. at 226. (emphasis added). § 93-17-9 is entitled "Surrender of a child to a home for care and adoption." There is no statute dealing with the surrender of a child to family members or private parties for care and adoption.
The decision in C.C.I. conforms with § 8 of the Uniform Adoption Act which reads:
§ 8. [Withdrawl of Consent]
(a) A consent to adoption cannot be withdrawn after the entry of a decree of adoption.
(b) A consent to adoption may be withdrawn prior to the entry of a decree of adoption if the Court finds, after notice and opportunity to be heard is afforded to petitioner, the person seeking the withdrawal, and the agency placing a child for adoption, that the withdrawal is in the best interest of the individual to be adopted by the Court ordered withdrawal.
The cases noted under this section indicate a consensus that permission to withdraw consent will not be granted absent a showing of fraud, duress or intimidation. See Pierce v. Pierce, 279 Ark. 62, 648 S.W.2d 487 (1983); McCluskey v. Kerlen, 278 Ark. 338, 645 S.W.2d 948 (1983); In re Doe's *695 Adoption, 87 N.M. 253, 531 P.2d 1226 (1975); In re Adoption of Graves, 481 P.2d 136 (Okl. 1971); Dale v. Franklin, 22 Ark. App. 98, 733 S.W.2d 747 (1987); Matter of Adoption of Dailey, 20 Ark. App. 180, 726 S.W.2d 292 (1987).
The right of a natural parent to withdraw valid consent to adoption is covered in 74 ALR3d 421. This comment recognizes that there is a split of authority on whether withdrawal of consent is to be permitted prior to the entry of final decree of adoption. Among the cases cited that deny withdrawal after placement without cause is Williams v. Pope, 281 Ala. 416, 203 So.2d 271 (1967), the case the Chancellor below found controlling in this instance.
Williams v. Pope, supra, involved the attempted revocation of consent by the natural mother to the private adoption of her seventh child to a relative in the absence of a statute allowing revocation. The Alabama Supreme Court reversed and remanded on other grounds, but on the issue of revocation of consent, the Alabama Court said:
In 2 Am.Jur.2d, Adoption, § 46, p. 897, we find:
In many jurisdictions the right of a parent to withdraw a consent to the adoption of a child is controlled and limited by the provisions of the adoption statutes themselves, and aside from express statutory provisions the trend of modern authority is toward the position that a parent who has freely and knowingly given the requisite consent to the adoption of his or her child cannot, after that consent has been acted upon by the adoptive parents by bringing adoption proceedings, withdraw that consent arbitrarily, or as of right so as to bar the court from decreeing adoption. This is particularly true where, in reliance upon such consent, the proposed adopting parents have taken the child into their custody and care for a substantial period of time and bonds of affection have been forged between them and the child.
To like effect, see 2 C.J.S. Adoption of Children § 21(4), Pocket Part note 15.1; Annotation 156 A.L.R. 1011. We quote the following from In re Holman's Adoption, 80 Ariz. 201, 295 P.2d 372, 376, where it was noted that the courts are divided on the question, and cases from other jurisdictions are cited:
The direct question of whether this consent is revocable is of first impression in this court. In view of our holding, however, that the best interest of the child is the paramount consideration of the court and in view of our interpretation of section 27-203, supra, relating to consent we hold that a consent once given by the parent or other persons having the authority to give such consent, may not be revoked after the child has been placed in the possession of the adoptive parents except for legal cause shown, as where such consent was procured through fraud, undue influence, coercion or other improper methods. Provided always, however, that the court may permit said revocation where upon hearing, it is shown that it will be for the best interest of the child that it be returned to its natural parents. Or if there are no parents, if it appears upon hearing that the best interest of the child will not be promoted by its adoption by the proposed adoptive parents, the adoption will be denied.
Id. 203 So.2d at 275. The Alabama Supreme Court held that a showing of emotional strain did not constitute legal cause for the attempted revocation of consent as outlined in the foregoing citations. Id. at 276.
The only difference between the rule in Williams and C.C.I. is the manner of adoption: Williams involved the private placement of the child with relatives, C.C.I. involved the placement of the child with an agency. The Chancellor below found Williams to be controlling and articulated with specificity the substantial evidence which supported his findings.
Under our standard of review, and after careful consideration of the record in this case, we find that the Chancellor did not err. In so holding, however, we do not *696 mean to pronounce that consent may never be withdrawn. We emphasize that such a determination must be made on a case-by-case basis in timely fashion without unnecessary delay in the proceedings, always keeping in mind that the best interest of the child is paramount.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
PRATHER, J., concurs in result only.