LEE, P.J.,
for the Court.
PROCEDURAL HISTORY AND FACTS
¶ 1. This case results from the denial of a petition to adopt a minor child. In an effort to protect the identity of the child, this Court has removed the names of the parties from the style of the case; To avoid confusion, this Court will refer to the parties with fictitious names.
¶2. Betsy North was born to Maggie North in December 2001, and Maggie died shortly thereafter. Maggie was married at the time Betsy was born; however, Maggie and her husband had been estranged for several months and were in the process of securing a divorce. Maggie was also involved with Bob Jones around the time of Betsy’s birth, but neither he nor Maggie claimed that he was Betsy’s father. As such, no father was listed on Betsy’s birth certificate.
¶ 3. The day after Maggie died, Betsy’s maternal aunt and uncle, Mike and Alice Abies, secured custody of Betsy in the Warren County Youth Court.
¶ 4. On January 16, 2002, Mitch Dixon filed a petition seeking custody and a paternity test, the results of which revealed that Dixon was Betsy’s father. Maggie was never married to . Dixon, who was, and is currently, married to another woman. On March 22, 2002, the Abies filed a petition ■ to adopt Betsy, and Dixon filed a motion for custody or, in the alternative, visitation. The trial court granted the Abies custody of Betsy but denied their petition to terminate Dixon’s parental rights and adopt Betsy. The court also denied Dixon’s motion for custody but granted him visitation.
¶ 5. It is from this ruling that the Abies appeal, arguing, that the chancellor committed error in not terminating Dixon’s parental rights and in denying the Ables’s petition to adopt Betsy. The Abies do not attack, and therefore we do not address, the custody and visitation arrangement which provides Dixon with supervised visitation twice a week. Finding no error, we affirm.
*200 STANDARD OF REVIEW
¶ 6. Our scope of review is limited. “This Court will not overturn a Chancellor’s findings of fact when supported by substantial evidence unless an erroneous legal standard is applied or is manifestly wrong.” Grafe v. Olds, 556 So.2d 690, 692 (Miss.1990).
I. DID THE TRIAL COURT ERR IN FAILING TO TERMINATE DIXON’S PARENTAL RIGHTS AND IN DENYING THE ABLES’S PETITION TO ADOPT BETSY?
¶ 7. Because Maggie was married at the time Betsy was born, we must first address the common-law presumption that the husband of the mother is the father of the child. Although this presumption is “one of the strongest presumptions known to law,” it is not absolute. Krohn v. Migues, 274 So.2d 654, 657 (Miss.1973). At common law, this presumption was rebutted by showing either that the husband was incapable of procreating or that the mother and husband were physically separated at the time of conception. Id. Scientific and technological advancements have resulted in other means of rebutting this presumption, such as paternity testing. See Miss.Code Ann. §§ 93-9-21, 93-9-27 (Rev.2004).
¶ 8. Mississippi law provides that if the probability of paternity, as calculated by an expert qualified as an examiner of genetic tests, is 98% or greater, there is a rebuttable presumption of paternity. Miss.Code Ann. § 93-9-27(2). Dixon and Betsy’s test results showed that Dixon’s probability of paternity was 99.5%, and the court entered an agreed order of paternity acknowledging that Dixon was Betsy’s father based upon the test results. As there is no evidence in the record refuting the statutory presumption, we agree with the chancellor’s finding that Dixon, and not Maggie’s estranged husband, was Betsy’s father.
¶ 9. The Abies argue that Mississippi Code Annotated Section 93-17-5(3) (Rev.2004), which addresses the rights of an unmarried father during an adoption proceeding, controls. That sub-section provides as follows:
In the case of a child born out of wedlock, the father shall not have a right to object to an adoption unless he has demonstrated, within the period ending thirty (30) days after the birth of the child, a full commitment to the responsibilities of parenthood. Determination of the rights of the father of a child born out of wedlock may be made in proceedings pursuant to a petition for determination of rights as provided in Section 93-17-6.
¶ 10. Section 93-17-6 provides in part that “any person alleged or claiming to be the father of a child born out of wedlock who is proposed for adoption ... may file a petition for determination of rights as a preliminary pleading to a petition for adoption .... ” Such petition may not be filed within thirty days of the child’s birth, but may be filed any time after the thirty-day period has expired. Id.
¶ 11. Section 93-17-6(4) addresses how an alleged father may show his commitment to parenthood as required by Section 93-17-5(3).
(4) Proof of an alleged father’s full commitment to the responsibilities of parenthood would be shown by proof that, in accordance with his means and knowledge of the mother’s pregnancy or the child’s birth, that he either:
(a) Provided financial support, including, but not limited to, the payment of consistent support to the mother during her pregnancy, contributions to the payment of the medical expenses of pregnancy and birth, and contributions of *201 consistent support of the child after birth; that he frequently and consistently visited the child after birth; and that he is now willing and able to assume legal and physical care of the child; or (b) Was willing to provide such support and to visit the child and that he made reasonable attempts to manifest such a parental commitment, but was thwarted in his efforts by the mother or her agents, and that he is now willing and able to assume legal and physical care of the child.
¶ 12. On January 16, Dixon filed a petition seeking a paternity test, which he argues should be considered as a demonstration of his willingness to make “a full commitment to parenthood” under Section 93-17-5(3). In turn, the Abies argue that Dixon evidenced no willingness to parent the child; therefore, he lacked standing to contest the adoption. The Abies point to testimony that Dixon and Maggie had agreed to keep their relationship secret, allowing Bob to rear Betsy as his own child. While Dixon did not support Maggie during her pregnancy, he maintains that he refrained from doing so as part of their agreement to lure Bob into believing that Maggie was carrying Bob’s child. Dixon argues that his lack of support prior to Maggie’s death should not be counted against him, as he was merely following her request. The Abies also argue that Dixon never made any attempt to financially support Betsy after she was born, and Dixon counters that the Abies thwarted his attempts to give Betsy clothing and gifts after she was born.
¶ 13. The chancellor addressed the adoption as a contested adoption under Mississippi Code Annotated Section 93-17-8. In so doing, she obviously agreed with Dixon’s argument that his efforts to prove his paternity and secure custody of Betsy in the weeks following her birth sufficiently evidenced his willingness to assume full parental responsibility as required under Section 93-17-5(3). Furthermore, Dixon testified that he attempted to support Maggie prior to Betsy’s birth, but at Maggie’s insistence he did not assist her during the pregnancy. Dixon also testified that he tried to give Betsy gifts after her birth, but the Abies rejected such gestures. In her fifty-two page opinion, the chancellor discussed both the arguments presented by the parties and the applicable law. Recalling our deferential standard of review, we find no error in her conclusion that Dixon did, indeed, demonstrate his commitment to parenthood.
¶ 14. Mississippi law allows adoption over the objection of a parent in limited circumstances. Such circumstances include abandoning or deserting the child or when the objecting parent is mentally, morally, or “otherwise unfit” to rear and train the child. Miss.Code Ann. § 93-17-7(1) (Rev.2004). The statute further provides that adoption may be allowed over a parent’s objection when the parent has abused the child; the parent consistently refused to provide adequate food, clothing, shelter and medical treatment for the child; the parent suffers from a medical or emotional illness, substance abuse or chemical dependancy or other mental or physical deficiency or disability that renders the parent unable or unwilling to provide a permanent home for the child; or the parent’s past or present conduct would pose a risk of “substantial harm” to the child. Miss.Code Ann. § 93-17-7(2) (Rev.2004).
¶ 15. Additionally, a parent may lose his right to object to the adoption of his child by engaging in acts which would permit termination under Section 93-15-103 (Rev.2004). A person may have his parental rights terminated by deserting *202 the child; having no contact for six months with a child under the age of three; abusing the child or another child; where the child evidences “extreme and deep-seated antipathy” toward the parent or when there is “substantial erosion” of the parent-child relationship caused by the parent’s behavior; when the parent has been convicted of certain crimes involving children; and when the child has been adjudicated to be an abused or neglected child and custody of the child has been transferred and a court has determined that reuniting the parent and child is not in the child’s best interest. See Miss.Code Ann. § 93-15-103.
¶ 16. There is a two-step process in determining whether or not a party should be permitted to adopt a child. The court must first determine that one of the grounds for adoption is present: (1) desertion or abandonment or (2) moral unfitness. In re M.L.W., 755 So.2d 558, 562(¶ 16) (Miss.Ct.App.2000) (citing Natural Mother v. Paternal Aunt, 583 So.2d 614, 618 (Miss.1991)). The standard of proof in terminating a parent’s parental rights is “clear and convincing proof.” Miss.Code Ann. § 93-15-109 (Rev.2004); N.E. v. L.H., 761 So.2d 956, 960(¶ 11) (Miss.Ct.App.2000). If the “clear and convincing” standard is met, the chancellor must then consider the child’s best interests. Id. In considering the best interest of a child, Mississippi law presumes that “the best interest of the child will be served by remaining in the custody of [her] natural parents.” Lauderdale County Dep’t. of Human Serv. v. T.H.G. and L.D.G., 614 So.2d 377, 385 (Miss.1992).
¶ 17. Regarding the Ables’s claim that Dixon abandoned or deserted Betsy, abandonment is defined as “any conduct by a parent which evinces a settled purpose to forego all duties and relinquish all parental claims to the child.” Natural Mother, 583 So.2d at 618. The test for abandonment is an objective one: “whether under the totality of the circumstances ... the natural parent has manifested [his] severance of all ties with the child.” S.N.C. v. J.R.D., Jr., 755 So.2d 1077, 1081(¶ 11) (Miss.2000) (quoting Ethredge v. Yawn, 605 So.2d 761, 764 (Miss.1992)). Abandonment deals with the relinquishment of a right or claim, whereas desertion involves an avoidance of a duty or obligation. Ainsworth v. Natural Father, 414 So.2d 417, 420 (Miss.1982).
¶ 18. The Abies argue that Dixon’s behavior prior to Betsy’s birth, coupled with his behavior while the litigation was pending, meets the criteria outlined in Section 93-17-7 and Section 93-15-103 and, therefore, permits the chancellor to allow the adoption over his objection. The Abies point to Dixon’s extensive criminal record, including a conviction for house burglary in 1987; three drug-related convictions in 1988, 1993, and 1998; a 1998 conviction for simple assault on his current wife; and his guilty plea to charges of domestic violence in 2003.
¶ 19. Notwithstanding Dixon’s criminal history, the chancellor found that the Abies failed to present sufficient evidence to terminate his parental rights. There was no evidence that Dixon abused Betsy, nor any of his other children. There was no evidence that Dixon had been convicted of a crime of sexual abuse involving children as outlined in section 93-15-103(g), and there was no evidence that Dixon had abused or neglected Betsy during his visits with her.
¶ 20. There was no evidence presented that Dixon had consistently refused to provide for Betsy’s needs; to the contrary, there was testimony that Dixon attempted to give her gifts, though the Abies consistently rebuffed his gestures. We cannot *203 find error in the conclusion that Dixon did not desert Betsy.
¶ 21. Dixon has attended many of his allowed visits with Betsy, as well as every legal proceeding since the onset of the litigation. His involvement, however limited by the court’s custody arrangement, evidences that Dixon has no intention of severing his ties with Betsy.
¶ 22. Furthermore, although Dixon was self-employed but not working at the time of trial, there was testimony that Dixon cared for his wife’s children full-time and was involved in the children’s activities. Because of Dixon’s drug convictions and because Dixon admitted to previously using marijuana, the chancellor required both Dixon and his wife to submit to random drug tests, which they passed.
¶ 23. The chancellor considered all the testimony presented and concluded that the Abies had failed to present clear and convincing evidence that Dixon’s parental rights should be terminated. On appeal, we are required to “respect the finding of fact made by a chancellor supported by credible evidence and not manifestly wrong.” Bryant v. Cameron, 473 So.2d 174, 179 (Miss.1985). Giving deference to the fact-finding of the chancellor, we agree. This issue is without merit.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., MYERS, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.