994 So.2d 177 (2008)
A.D.R.
v.
J.L.H.
No. 2007-CA-00702-SCT.
Supreme Court of Mississippi.
November 6, 2008.
*178 G. Charles Bordis, IV, attorney for appellant.
Donald P. Sigalas, Pascagoula, attorney for appellee.
Before WALLER, P.J., EASLEY and GRAVES, JJ.
GRAVES, Justice, for the Court.
¶ 1. This is a child custody dispute between the natural mother and natural father of a child. The natural mother previously had agreed to have her child adopted by a couple. The adoption was denied and temporary custody was granted to the natural father. The mother then sought custody of her child in chancery court. A guardian ad litem was appointed and subsequently moved to dismiss the mother's complaint for lack of standing. The chancery court granted the motion, and the mother now appeals to this Court.

FACTS
¶ 2. On August 7, 2006, Amy Rogers[1] filed a Complaint for Custody (the "Complaint"). In this Complaint, Rogers stated that she previously had agreed to have her child adopted by Kim Foster and Jack Foster. Rogers' consent to this adoption was memorialized in a document entitled Consent to Adoption and Waiver of Notice (the "Consent to Adoption"), which she signed on June 5, 2001. This adoption was never finalized. K.D.F. v. J.L.H., 933 So.2d 971, 973-80 (Miss.2006). The chancellor who denied the adoption also granted temporary custody of the child to the natural father, John Harris, the defendant in this case. K.D.F., 933 So.2d at 974. Rogers stated in her Complaint that, because the adoption was never finalized, she was withdrawing her consent to the adoption. She argued that she should be awarded custody of her child and alleges that Harris physically abused the child. Rogers requested the appointment of a *179 guardian ad litem to represent the best interest of the child.
¶ 3. On October 19, 2006, the chancellor entered an order appointing Kelly Pendergrass Dees the guardian ad litem for the child, and ordering Dees to investigate the allegations of child abuse, conduct an Albright[2] analysis, and submit a written report to the chancery court as soon as possible.
¶ 4. On March 5, 2007, Dees filed a Motion to Dismiss for Lack of Standing (the "Motion to Dismiss"). Dees argued that Rogers lacked standing to seek custody of the child because she executed the Consent to Adoption. Dees asserted that Mississippi law equates consent to an adoption with the irrevocable termination of parental rights. Dees requested that the chancery court dismiss Rogers' Complaint and claimed that the child's best interests would be met by allowing her to stay in the care of Harris, who resides with the child in North Carolina. On March 23, 2007, Rogers filed an Answer to the Motion to Dismiss for Lack of Standing, in which she denied that her Consent to Adoption constituted an irrevocable termination of her parental rights and denied that the child's best interests would be served by keeping her in Harris' custody.
¶ 5. On April 2, 2007, the chancery court conducted a hearing on Dees' Motion to Dismiss. Dees briefly recounted the factual background of the prior dispute over the adoption of the child by the Fosters. She then informed the chancellor that she had interviewed Rogers, but had not met Harris or the child. She explained that this was immaterial because "this is an issue, a matter of law." Dees stated that Rogers had entered a Consent to Adoption and argued that Mississippi case law treats such consent as a termination of parental rights. She stated that "Mississippi law is very clear on this subject, that execution of consent is irrevocable absent one of the three circumstances, being undue influence, duress or fraud." The chancellor asked for Dees' recommendation based on her interview of Rogers, and she responded that it was in the child's best interest not to visit with Rogers.
¶ 6. Rogers argued at the hearing that Dees could not truly represent the best interest of the child since Dees had never spoken with the child. Rogers also asserted that, although she had consented to a specific adoption arrangement with the Fosters, she did not voluntarily relinquish her parental rights. Rogers then entered two documents into evidence, the Consent to Adoption and the judgment denying the Fosters' adoption and awarding temporary custody to Harris. Rogers drew the chancellor's attention to the section of the judgment awarding temporary custody to Harris, which stated that "[JOHN HARRIS] should be awarded temporary physical custody of the minor child, subject to any future proceeding which may be filed by the child's mother, [AMY ROGERS], or any other interested parties."
¶ 7. At the conclusion of the hearing, the chancellor granted the Motion to Dismiss, and on April 3, 2007, the chancellor entered a judgment granting the Motion to Dismiss (the "Judgment"). Rogers timely appealed to this Court.

*180 ANALYSIS

¶ 8. Rogers raises two issues on appeal, and Harris raises one issue on cross-appeal. First, Rogers argues that the chancery court should not have granted the guardian ad litem's Motion to Dismiss. Harris contends that the chancery court properly dismissed the action. Second, Rogers asserts that the guardian ad litem failed to fulfill her duties by failing to 1) interview the child or Harris, 2) investigate Rogers' allegations of child abuse by Harris, 3) conduct an Albright analysis, and 4) submit a written report to the chancery court. Albright, 437 So.2d at 1005. Harris maintains that the guardian ad litem fulfilled her duties. On cross-appeal, Harris claims that the chancery court erred in assessing the fees for the guardian ad litem to him. Rogers argues that the chancery court did not err in assessing the guardian ad litem fees.

Standard of Review
¶ 9. This Court will affirm a chancellor's findings of fact if they are "supported by substantial evidence, unless an erroneous legal standard is applied or is manifestly wrong." L.T. v. J.H., 787 So.2d 1268, 1272 (Miss.2001) (citing Grafe v. Olds, 556 So.2d 690, 692 (Miss.1990)). If, however, the chancellor "has misapprehended the controlling rules of law or has acted pursuant to a substantially erroneous view of the law, we will proceed de novo and promptly reverse." S.N.C. v. J.R.D., 755 So.2d 1077, 1080 (Miss.2000); C.T. v. R.D.H., 843 So.2d 690, 706 (Miss. 2003) ("[W]e apply a de novo standard of review on questions of law").

I. Whether the Chancery Court Erred in Dismissing the Plaintiff's Case.
¶ 10. Rogers argues that the Consent to Adoption only constitutes consent to have the Fosters adopt her child and not consent for anyone else to gain custody of her child. Rogers adds that the judgment awarding temporary custody to Harris anticipated the possibility of a future custody proceeding initiated by Rogers. Harris argues that the Consent to Adoption constitutes a voluntary release of parental rights, which precludes the consenting parent from later contesting the termination of parental rights. Harris cites Grafe v. Olds, 556 So.2d 690, 694 (Miss.1990), in support of his argument.
¶ 11. The chancellor's judgment found that Rogers executed the Consent to Adoption on June 5, 2001. The judgment also included the following conclusions of law: 1) that the Consent to Adoption terminated Rogers' parental rights; 2) that the Consent to Adoption resulted in Rogers' lack of standing to claim custody; and 3) that the Complaint should be dismissed with prejudice.
¶ 12. This Court has decided cases regarding parents who consent to their child's adoption and parents who voluntarily terminate their parental rights. A brief review of the relevant precedent is helpful.
¶ 13. In 1981, this Court decided C.C.I. v. Natural Parents, 398 So.2d 220 (Miss. 1981). In that case, a young, unmarried couple consented to surrendering their child for adoption by C.C.I., an adoption agency. C.C.I., 398 So.2d at 221. Soon after signing the consent forms, the father attempted to revoke and rescind his consent. Id. After a trial regarding the adoption, the chancery court granted custody to the natural parents. Id. at 221-22. On appeal, this Court reversed, finding that, absent a clear and convincing showing of fraud, duress, or undue influence, the surrender of a child to an adoption agency is irrevocable, pursuant to Mississippi Code *181 Section 93-17-9[3]. Id. at 225-26. This Court added that "[s]trong policy reasons support such a holding. If a parent is allowed an unrestricted right to challenge his act of surrender, uncertainty and confusion among adoption agencies would undoubtedly result, making placement more difficult which would be detrimental to the children involved as well as to the public welfare." Id. at 226.
¶ 14. In 1990, this Court decided Grafe v. Olds, 556 So.2d 690 (Miss.1990). In that case, the mother initially consented to the adoption of her child by family members, but later opposed the adoption. Grafe, 556 So.2d at 691-92. Following hearings on the matter, the chancellor found that there was no reason to withdraw the mother's valid consent. Id., 556 So.2d at 692. On appeal, this Court affirmed the chancellor's decision. Id. at 696. This Court cited C.C.I. and ruled that the chancellor did not err by applying an Alabama case, Williams v. Pope, 281 Ala. 416, 203 So.2d 271 (1967), to the facts in Grafe. Id. at 694-96. The Alabama Supreme Court stated in Williams v. Pope that consent to an adoption cannot be revoked unless there is legal cause, such as fraud. Id. at 695. This Court concluded its decision in Grafe by stating that "we do not mean to pronounce that consent may never be withdrawn. We emphasize that such a determination must be made on a case-by-case basis in timely fashion without unnecessary delay in the proceedings, always keeping in mind that the best interest of the child is paramount." Id. at 695-96.
¶ 15. In 2001, this Court decided L.T. v. J.H., 787 So.2d 1268 (Miss.2001). In that case, the natural father, not knowing that he was the natural father at the time, consented to the adoption of his child and relinquished any rights to the child. L.T., 787 So.2d at 1271. The mother of the child told another man that he was the father and this man filed for joint custody of the child. Id. at 1270. After the mother's death, the maternal grandparents also tried to gain custody of the child. Id. at 1271. When the natural father discovered that he was the natural father of the child, he joined the custody suit and contested the validity of his consent and relinquishment of rights. Id. The chancellor found the consent valid and granted custody to the maternal grandmother and the man who had thought he was the father. Id. In L.T., this Court cited the law set out in Grafe and C.C.I., and affirmed the chancellor's finding that the natural father's consent was valid and irrevocable. Id. at 1272. This Court reasoned that because the natural father sought to assert his parental rights only so he could assign them to the grandmother, his consent should not be revoked. Id. This Court concluded that, since the natural father was not interested in gaining custody of the child for himself, he "has suffered no harm and proved no fraud." Id.
¶ 16. The chancellor in the instant case heard Dees, the guardian ad litem, argue that Mississippi law clearly held that a parent's consent to an adoption irrevocably terminates his or her parental rights. Dees argued that based on Grafe, C.C.I., *182 and L.T., Rogers' parental rights were terminated the moment she signed the Consent to Adoption for the Fosters to adopt her child. The chancellor then found that the Consent to Adoption terminated Rogers' parental rights, and that she lacked standing to claim custody of her child.
¶ 17. Because this is a question of law and specifically a question involving the interpretation of this Court's precedent, this Court reviews the chancellor's conclusion of law de novo. This Court finds that the cases cited by Dees and relied upon on appeal by Harris are distinguishable from the facts of this case. In C.C.I., Grafe, and L.T., the natural parent or parents initially consented to the adoption of their child by a specific person or couple, or through an adoption agency.[4]C.C.I., 398 So.2d at 221; Grafe, 556 So.2d at 691; L.T., 787 So.2d at 1271. The natural parent or parents later sought the revocation of their consent to the adoption by the specific person or couple, or through the adoption agency. C.C.I., 398 So.2d at 221; Grafe, 556 So.2d at 692; L.T., 787 So.2d at 1271. In these three cases, this Court held that the natural parent or parents could not revoke their consent to the adoptions to which they had previously agreed. C.C.I., 398 So.2d at 226; Grafe, 556 So.2d at 696; L.T., 787 So.2d at 1272.
¶ 18. The facts here differ from these three cases in one crucial aspect. Rogers signed a Consent to Adoption to surrender her child for adoption by the Fosters. However, Rogers does not now seek to revoke her consent to the adoption of her child by the Fosters. She seeks to challenge Harris' custody of the child. The Consent to Adoption explicitly states:
I hereby consent to the adoption of said child by the Petitioners, [KIM FOSTER] and [JACK FOSTER].... I do hereby give my consent freely and voluntarily to said adoption, relinquish all my rights and claims to said child and agree that from the date of the Decree of Adoption, said child shall, to all legal intents and purposes, be the child of the persons so adopting said child.

(Emphasis added). Taking the document as a whole, the plain meaning of the Consent to Adoption is not to terminate Rogers' parental rights generally or absolutely. The document terminates her rights to the extent necessary to have the Fosters adopt her child. Thus, by signing the Consent to Adoption, Rogers was only consenting to the adoption of her child by the Fosters and terminating her parental rights as against the Fosters. The adoption by the Fosters was subsequently denied by the chancellor in the previous case. Because that adoption was denied, Rogers is now attempting to exercise her parental rights against the natural father  not against the intended adoptive parents or agency, as was the case in C.C.I., Grafe, and L.T. As Rogers' counsel stated at the hearing regarding the Motion to Dismiss, "[Rogers'] consent was based on the fact that [the Fosters] were going to adopt that child. That didn't happen. But ... she has a right now or still has an interest in the child. She's the child's natural mother." Indeed, in Grafe this Court explicitly stated that "we do not mean to pronounce that consent may never be withdrawn. *183 We emphasize that such a determination must be made on a case-by-case basis ... always keeping in mind that the best interest of the child is paramount." Grafe, 556 So.2d at 695-96.
¶ 19. Another distinguishing factor between the facts in L.T. and the facts here is that in the former case, the father sought to assert his parental rights so that he could give those rights to the maternal grandmother. Id. at 1271-72. Here, Rogers is seeking to exercise her parental rights for herself and contest custody of the child on her own behalf. There is no indication from the record that Rogers is attempting to assert her parental rights so that someone else can have custody of the child.
¶ 20. Because the cases relied upon by Dees and Harris are distinguishable from the facts of this case, this Court finds that the chancellor erred by drawing the legal conclusion that Rogers' Consent to Adoption irrevocably terminated her rights to the child as against all others. Rogers' Consent to Adoption clearly terminated her rights to the child vis-à-vis the Fosters, but the legal precedent does not dictate that such consent should irrevocably terminate parental rights generally, or otherwise subjugate them with respect to individuals other than the intended adopting individuals.
¶ 21. Furthermore, the statutes cited in the relevant precedent and by Harris on appeal do not support the idea that once a person consents to have his or her child adopted by a specific person or couple, his or her consent can be used to award any other individual custody of the child, even if the other person is a parent or relative.
¶ 22. Harris cites Mississippi Code Section 93-15-103(2), which states that
[t]he rights of a parent with reference to a child, including parental rights to control or withhold consent to an adoption, and the right to receive notice of a hearing on a petition for adoption, may be relinquished and the relationship of the parent and child terminated by the execution of a written voluntary release, signed by the parent, regardless of the age of the parent.
Miss.Code. Ann. § 93-15-103(2) (Rev. 2004). The statute merely states that a parent may voluntarily terminate his or her rights to a child by a written voluntary release. It does not follow that a signed consent relinquishing parental rights to facilitate the adoption of a child by certain individuals should be interpreted as a termination of parental rights against all other individuals. The permissive language in Section 93-15-103(2) does not indicate that it was the Legislature's intent to require that a parent who consents to have his or her child adopted by specific individuals also consents to have the child adopted by anyone, in the event that the intended adoption does not occur.
¶ 23. Also cited is Mississippi Code Section 93-17-9, partially reproduced above in footnote three, which governs the surrender of children to be adopted through adoption agencies. Miss.Code. Ann. § 93-17-9 (Rev.2004). The underlying policy mentioned above requires that consent be irrevocable so that adoption agencies can place children with adopting parents with as little disruption as possible. C.C.I., 398 So.2d at 226. This Court has applied this policy to private adoptions as well. Grafe, 556 So.2d at 694. However, in a situation such as this, where a parent agrees for specific individuals to adopt her child, the adoption fails, and then the parent seeks to regain custody of the child, the policy underlying the relevant Mississippi law is not furthered by preventing the parent from even contesting the custody of her child. *184 Of some significance is the fact that the prior chancellor's judgment denying the Fosters' adoption states that Harris would have temporary custody of the child "subject to any future proceeding which may be filed by the child's mother, [AMY ROGERS], or any other interested parties." This is not to say that Rogers should necessarily be granted custody of the child, but she should at least be given the opportunity to contest custody of the child. Her consent to have the Fosters adopt her child should not preclude her from challenging Harris' custody of the child.
¶ 24. We understand that the best interest of the child is central to any custody dispute, see, e.g., L.T., 787 So.2d at 1272, and that a child's best interest is necessarily affected by his or her stability, or lack thereof, in terms of family relationships and geography. In this case, the child has lived away from Rogers and from Mississippi for the majority of her life. Nevertheless, Rogers should at least be given the opportunity to substantively contest Harris' custody of her child, especially because of the allegations of child abuse. Therefore, we find that the chancellor erred by granting the Motion to Dismiss for Lack of Standing.
¶ 25. Standing[5] is one of several justiciability doctrines. Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 347-48, 56 S.Ct. 466, 483, 80 L.Ed. 688, 711 (1936) (Brandeis, J., concurring). The United States Supreme Court has defined the principle of standing as "whether or not the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Allen v. Wright, 468 U.S. 737, 750-51, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556, 569 (1984) (citation omitted). Rogers is entitled to have the chancery court decide the merits of the custody dispute. We have concluded that the Consent to Adoption did not terminate Rogers' parental rights as to all others, and that it only terminated her rights as against the Fosters. She is, in fact, the parent of the child, and to the extent that we find her parental rights intact, there is no question that she, as a parent, has standing to dispute the custody of her child. Absent the termination of parental rights, a natural parent has the right to bring a claim regarding the custody of his or her child. Thus, Rogers has standing to bring her custody claim to chancery court.
¶ 26. Harris argues on appeal that "[n]o court is required to do a vain and foolish thing," and that the chancery court properly dismissed Rogers' Complaint for lack of standing. Harris claims that
[i]n essence, [Amy Rogers] insists that she be allowed to show the Court that she has abandoned her minor child, has failed to exercise reasonable [sic] available visitation with the child, has failed to establish a viable relationship with the minor child, has made no contact with the minor child in more than one (1) year, and that a substantial erosion of the relationship between the mother and the child has occurred, if ever there was one.
Remember the opening sentence regarding vain and foolish acts? It is the contention of [John Harris], that the Chancery Court of Jackson County, Mississippi, simply exercised its inherent judicial authority when it granted the Guardian Ad Litem's Motion to Dismiss for lack of standing. To do otherwise would have been to prolong the inevitable, waste valuable judicial resources and participate in a vain and foolish act.
*185 We are not persuaded by this argument. The Motion to Dismiss was made on the basis of Rogers' alleged lack of standing and the dispute over the ramifications of the Consent to Adoption. The likelihood of Rogers' success on the merits  that is, her ability to prove to the chancery court that she should be awarded custody of her child  was not at issue. Rogers should be given an opportunity to be heard on the merits of her claim because she has standing. This Court does not believe that affording a litigant with standing the right to present the merits of a claim can fairly be described as "a vain and foolish act."
¶ 27. For these reasons, this Court finds that the chancery court erred in granting the guardian ad litem's Motion to Dismiss for Lack of Standing.

II. Whether the Guardian Ad Litem Fulfilled her Duties.
¶ 28. Because we find that Rogers should be able to proceed with the merits of her custody claim, the other issue she raises on appeal regarding the guardian ad litem is not properly before this Court at this time.

III. Whether the Chancery Court Erred in Assessing Fees to the Defendant.
¶ 29. On cross-appeal, Harris challenges the chancellor's assessment of the guardian ad litem fees to him. Because we remand for proceedings on the merits, we now vacate the chancellor's assessment of fees and remand for a new determination regarding the fees at the proceedings on the merits.

CONCLUSION
¶ 30. This Court finds that the chancellor erred in granting the guardian ad litem's Motion to Dismiss for Lack of Standing. Therefore, we reverse the chancery court's judgment, remand for proceedings on the merits of Rogers' custody claim, vacate the assessment of guardian ad litem fees, and remand for a new assessment of fees at the proceedings on the merits.
¶ 31. ON DIRECT APPEAL: REVERSED AND REMANDED. ON CROSS-APPEAL: VACATED AND REMANDED.
SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, DICKINSON, AND RANDOLPH, JJ., CONCUR. LAMAR, J., NOT PARTICIPATING.
NOTES
[1] Pseudonyms are used in order to protect the identity of the child whose custody is at issue.
[2] Albright v. Albright, 437 So.2d 1003 (Miss. 1983), is a case in which this Court set out several factors relevant to a determination of the best interest of the child. Those factors include the age of the child; the health of the child; the sex of the child; continuity of care for the child; parenting skills; employment of the parent; the physical and mental health and the age of the parent; moral fitness of the parent; the home, school, and community record of the child; the preference of the child of sufficient age; stability of home environment and employment of the parent; and other factors. Albright, 437 So.2d at 1005.
[3] Mississippi Code Section 93-17-9 states in relevant part:

Any person required to be a party to an adoption proceeding ... may execute the surrender of a child to a home by sworn or acknowledged instrument, which shall include the following: ... that all parental rights to such child ... are relinquished by such person; ... that such surrender shall be irrevocable and that such person will not, in any manner, interfere with the custody of such child thus vested in the home.
Miss.Code. Ann. § 93-17-9 (Rev.2004). This language has not changed since 1981. See C.C.I., 398 So.2d at 222.
[4] In L.T., the natural parent either consented to the adoption of his child by a specific person, or consented to the adoption of his child by anyone-the facts presented in the decision are not entirely clear. L.T., 787 So.2d at 1271. If the father consented to an adoption of his child by anyone, then the situation is analogous to an adoption through an agency as in C.C.I., because in both situations, the natural parent does not initially choose the adopting parents. If the father consented to an adoption by a specific person, then the facts in L.T. are analogous to those in Grafe.
[5] Neither of the parties presents arguments or cites case law specifically dealing with the issue of standing. However, it would be remiss not to at least briefly address the principle of standing, since that is the basis upon which Rogers' Complaint was dismissed.