# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00955-COA

**MARIA LYNN PRUITT SIMMONS**                                                     **APPELLANT**

**v.**

**HARRISON COUNTY DEPARTMENT OF**                                          **APPELLEE**
**HUMAN SERVICES**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/12/2015 |
| TRIAL JUDGE: | HON. JENNIFER T. SCHLOEGEL |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | CAROLYN ANN GEARY |
| ATTORNEY FOR APPELLEE: | TONYA MICHELLE BLAIR |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED: 10/03/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., WILSON AND WESTBROOKS, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Maria Lynn Pruitt Simmons appeals the chancellor's denial of her motion for relief from the judgment terminating her parental rights.  We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     The Harrison County Department of Human Services (DHS) conducted an investigation after it received reports of alleged drug abuse and child neglect by Simmons. In August 2011, DHS took custody of Simmons's five children after they were found living in unsanitary and deplorable conditions.  The children were placed into temporary foster care.

This was Justin Smith's[1] third time entering DHS custody. Justin is the third oldest of Simmons's children. He is the subject of this appeal.

¶3. On December 16, 2011, Justin was adjudicated a neglected child by the youth court. He was placed in a psychiatric treatment facility while the other children remained in foster homes. DHS developed and implemented a plan to reunite Simmons with her children. After Simmons failed to comply with the plan, DHS ceased its reunification efforts and sought to terminate Simmons's parental rights.

¶4. On April 3, 2012, DHS presented both Simmons and Joseph Anthony Smith, Justin's alleged father, with a "Surrender of Parental Rights and Consent to Adoption to the Mississippi Department of Human Services." Unbeknownst to DHS, the document incorrectly listed Justin's date of birth as February 2, 2005 – the correct date was February 1, 2005. Despite the error, both Simmons and Smith signed copies of the document, surrendering their parental rights to Justin. Notably, Smith is not listed on the child's birth certificate, and the record indicates that he is not Justin's biological father.

¶5. On September 4, 2012, a petition was filed to terminate the parental rights of any unknown father of the minor child so that adoption proceedings could begin. The matter was set for a hearing on November 14, 2012. Prior to the hearing, DHS discovered the error made to Justin's date of birth. DHS corrected the error and sought to have both Simmons and Smith execute new surrender and release forms. The attempt was unsuccessful. DHS

---

[1] In the interest of privacy, this Court uses a fictitious name for the child. We also use a fictitious surname for the child's alleged father.

2

was unable to locate Smith, and Simmons refused to sign the revised document.[2] Justin remained in DHS custody.

¶6.     Justin was released from inpatient psychiatric treatment and placed with a foster family in October 2014.  DHS then filed a petition to terminate the parental rights of Simmons, Smith, and the unknown biological father of Justin.  A hearing was set for February 12, 2015.  The chancery court issued summonses to Simmons, Smith, and the unknown biological father.  Simmons was served with process on October 20, 2014.  Neither Simmons, Smith, nor any other person appeared for the hearing as a parent of Justin.  As a result of the hearing, the chancellor terminated the parental rights of Simmons, Smith, and any unknown biological father of Justin.

¶7.     On July 9, 2015, Simmons, through legal counsel, filed a "Motion for Relief of Judgment Pursuant to Mississippi Rule of Civil Procedure 60(b)(1)(2) & (6)."  Simmons contested the judgment terminating her parental rights.  She argued that she was denied due process because she had not been personally served with process.  She claimed that she never received a copy of the petition to terminate parental rights, and therefore, she was unaware of the hearing date.  Simmons requested that the judgment be set aside and that she be given an opportunity to defend herself in a hearing.  In November 2015, while the motion was pending, Justin's adoption was finalized.

¶8.     The chancellor held a hearing on the motion on February 25, 2016, and denied the motion.  The chancellor ruled that Simmons was not entitled to service of process or notice

---

[2] In December 2011, Simmons voluntarily relinquished her rights to two of her other children.  Both children were later adopted by relatives outside of the state.

of the hearing because she voluntarily consented to waiver of process when she signed the document of surrender and release on April 3, 2012. The chancellor further found that the scrivener's[3] error on the document was a non-fatal defect. In her order, the chancellor noted that Justin's date of birth had been off by one day. She concluded that the document was correct in all other aspects – the child, the city, the state, the year of birth, and the mother's name were correctly identified. The chancellor also found that Simmons had acknowledged that she signed the document, and that Simmons was aware that she was surrendering her parental rights to Justin. Aggrieved, Simmons now appeals.

STANDARD OF REVIEW

¶9.     "Whether the chancery court had jurisdiction to hear a particular matter is a question of law, to which this Court must apply a de novo standard of review." *In re Adoption of D.N.T.*, 843 So. 2d 690, 697 (¶12) (Miss. 2003).

ANALYSIS

I.      *Whether the chancery court had personal jurisdiction over Simmons.*

¶10.    Simmons first asserts that the chancery court erred when it found that she waived service of process. She contends that she executed the surrender and release form two years before DHS filed the petition to terminate her parental rights. This, she argues, violates Rule 4(e) of the Mississippi Rules of Civil Procedure. Rule 4(e) requires that a waiver of service of process be signed and filed a day after the petition is filed. As a result of this alleged

---

[3] The doctrine of scrivener's error is "a rule permitting a typographical error in a document to be reformed by parol evidence, if the evidence is precise, clear, and convincing." Black's Law Dictionary (10th ed. 2014).

4

violation, Simmons contends that the waiver of service of process, contained within the surrender and release form, was invalid.

¶11. She further argues that the service of process was invalid because the process server failed to personally serve her. She asserts that the process server left the summons with her brother at a gas station and not at her residence. She claims that she never received a copy of the summons or any notice of the termination hearing. As a result, Simmons argues that the chancery court lacked personal jurisdiction and should not have proceeded with a termination hearing. She argues that the judgment terminating her parental rights to Justin is invalid.

¶12. DHS contends that Simmons erroneously relies on the language of Rule 4 to assert that the waiver was invalid. DHS argues that this issue is controlled by Mississippi's statutory provisions rather than the rules of civil procedure. It asserts that the statutory provisions of Mississippi Code Annotated section 93-15-103(2) (Rev. 2013) govern termination-of-parental-rights cases.

¶13. DHS further asserts that the surrender and release form, signed by Simmons, conformed with the statutory requirements of section 93-15-103(2). Thus, DHS argues that Simmons waived her right to notice of the termination hearing when she voluntarily executed the document. DHS asserts that the chancery court did in fact have personal jurisdiction over Simmons and properly proceeded with the termination hearing.

¶14. The Mississippi Supreme Court has held that "a parent cannot be deprived of the custody of his or her child without notice and an opportunity to be heard." *Blakeney v.*

5

*McRee*, 188 So. 3d 1154, 1162 (¶19) (Miss. 2016) (citation omitted). Further, this Court has held that "[t]he existence of personal jurisdiction depends upon reasonable notice to the defendant." *Price v. McBeath*, 989 So. 2d 444, 450 (¶21) (Miss. Ct. App. 2008) (citation omitted). "A trial court can acquire jurisdiction over an individual through service of process." *Id.* (citation omitted).

¶15.    Both the rules of civil procedure and the statutory provisions permit a party defendant to waive service of process. Rule 4(e) provides:

> Any party defendant who is not an unmarried minor, or mentally incompetent may, without filing any pleading therein, waive the service of process . . . in any action, with the same effect as if he or she had been duly served with process, in the manner required by law on the day of the date thereof. Such waiver of service . . . shall be in writing[,] dated[,] and signed by the defendant and duly sworn to or acknowledged by him or her . . . . However, such written waiver of service . . . must be executed after the day on which the action was commenced and be filed among the papers in the cause . . . .

Similarly, and with specific pertinence to the present matter, section 93-15-103(2) provides:

> The rights of a parent with reference to a child, including parental rights to control or withhold consent to an adoption, and the right to receive notice of a hearing on a petition for adoption, may be relinquished and the relationship of the parent and child terminated by the execution of a written voluntary release, signed by the parent, regardless of the age of the parent.

¶16.    Here, Simmons argues that the waiver was invalid under Rule 4(e), while DHS contends that the waiver was valid pursuant to section 93-15-103(2). The chancellor found that although Simmons was not properly served with process under Rule 4, the insufficient service was of no consequence because the statute rather than the rules of civil procedure controlled. Therefore, the chancellor found that the waiver was valid and that the chancery court had jurisdiction to hear the termination matter.

6

¶17. The supreme court previously addressed this conflict between the statute and the rules of civil procedure in *D.N.T.*, 843 So. 2d at 706-07 (¶¶31-36). In *D.N.T.*, the appellant argued that the chancery court lacked jurisdiction because the natural mother was not served with process under the provisions of Rule 4. *Id*. The supreme court disagreed with the appellant and held, "[n]otwithstanding the provisions of [Rule 4], we must remember the caveat in [Mississippi Rule of Civil Procedure] 81(a)(9), which provides these rules of civil procedure have limited applicability in the actions described in Title 93 of the Mississippi Code, and that those actions are for the most part governed by statute." *Id.* at 706 (¶33). Rule 81(a) further provides that "[s]tatutory procedures . . . shall remain in effect and shall control to the extent they may be in conflict with the[] rules [of civil procedure]."

¶18. The rules of civil procedure clearly defer to Mississippi's statutory provisions for matters concerning termination of parental rights and adoption. Therefore, we find that Simmons's reliance on Rule 4(e) is misplaced. Section 93-15-103(2) governs this issue. The surrender and release form specified that signing the document would result in a waiver of service of process and further notice of any court proceedings regarding Justin. Thus, the language used by DHS in the surrender and release form conformed with the requirements of section 93-15-103(2).

¶19. Simmons voluntarily signed the document, and therefore, she waived service of process. Neither at trial nor on appeal has Simmons alleged that the document was executed as a result of fraud, duress, or undue influence. Although, in her trial testimony, Simmons first claimed that she was "forced from the beginning to sign [her] rights over," she later

7

admitted that she made the choice to sign the "surrenders" because she wanted to ensure that her children were placed with family members rather than strangers. This declaration indicates that Simmons made the calculated decision to voluntarily relinquish her parental rights to her children, including Justin.

¶20. The chancellor, in her application of section 93-15-103(2), found that the written release or consent terminated Simmons's parental rights to Justin. Therefore, Simmons's objection to the termination of her parental rights and the subsequent adoption of Justin can not be sustained absent a showing of either fraud, duress, or undue influence by clear and convincing evidence. *See Grafe v. Olds*, 556 So. 2d 690, 694 (Miss. 1990).

¶21. We find no error in the chancellor's application of the statutory provisions. When a chancellor is faced with matters concerning the termination of parental rights or adoption, the controlling body of law is the statute rather than the rules of civil procedure. The document presented to Simmons conformed with the requirements of section 93-15-103(2). The language contained within the surrender and release form expressly provided that signing the document would result in a waiver of notice to court proceedings.

¶22. Without clear and convincing evidence of any alleged fraud, duress, or undue influence, we must find that Simmons is bound by her voluntary consent. We find that the chancellor's judgment terminating Simmons's parental rights is valid. This issue is without merit.

> II. *Whether the error to Justin's date of birth invalidated Simmons's consent.*

¶23. We now address the clerical error regarding Justin's date of birth. Simmons argues

8

that DHS recognized the defect in the document, yet the agency proceeded to serve the petition upon her. As a result, she claims that the error rendered her consent invalid. She contends that the document did not clearly state Justin's date of birth, which she asserts is a statutory requirement. She argues that the chancellor erred when she held that the error was non-fatal to the termination proceedings.

¶24. Simmons sought relief from the judgment of termination under Rule 60(b)(2). Pursuant to Rule 60(b)(2), "the court may relieve a party or his legal representative from a final judgment, order, or proceeding for . . . accident or mistake[.]" M.R.C.P. 60. Simmons argues that the chancellor erred when she denied the motion for relief from the judgment because the consent form contained an error.

¶25. We first reiterate that this matter is governed by the statutory provisions of title 93 of the Mississippi Code Annotated rather than the rules of civil procedure. Next, we note a flaw in Simmons's contention. Rule 60(b) provides that a court *may* relieve a party from a final judgment. The language undoubtedly vests a court with a permissive rather than a mandatory instruction. Therefore, if the chancellor decided this case under the rules of civil procedure, it is not certain that the outcome, regarding this issue, would be different. A chancellor's grant of relief from a judgment is not automatic upon assertion of an accident or mistake.

¶26. Mississippi Code Annotated section 93-15-111(1)(c) (Supp. 2016) now requires that a child's full name, date and time of birth, and place of birth be included on a parent's execution of a written voluntary release. Notably, title 93 was amended in 2016 to include this requirement. Prior to the amendment, section 93-15-103 governed the requirements for

9

a parent's written relinquishment of parental rights. The present action was commenced in 2014, which was prior to the enactment of section 93-15-111. Thus, this action was governed by section 93-15-103, which provided no such requirements.

¶27. We find that the clerical error made to Justin's date of birth had no effect on Simmons's voluntary surrender of her parental rights and waiver of service of process. Simmons does not claim that she did not sign the document. Instead, in her testimony she acknowledged her intent to surrender her parental rights when she signed the document. Therefore, we must agree with the chancellor's finding that the error was not fatal to Simmons's consent and waiver of process. This issue is without merit.

¶28. **AFFIRMED.**

**LEE, C.J., IRVING, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**