IN THE SUPREME COURT OF MISSISSIPPI

NO. 2009-CA-01025-SCT

*IN THE MATTER OF THE ESTATE OF JOHN
DAVIS, DECEASED, DANIEL M. THOMPSON,
DECEASED, AND LOUISE THOMPSON,
DECEASED, LULA MAE DAVIS, DECEASED:
ELDON LADNER AND REGINA LADNER
DAVENPORT*

*v.*

*ALBERTA L. O'NEILL*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/20/2009 |
| TRIAL JUDGE: | HON. CARTER O. BISE |
| COURT FROM WHICH APPEALED: | STONE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | ROBIN L. ROBERTS |
| | JOEL LAVELLE BLACKLEDGE |
| ATTORNEYS FOR APPELLEE: | TADD PARSONS |
| | JACK PARSONS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 08/19/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., RANDOLPH AND CHANDLER, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     We are asked to determine whether a trial court erred by denying an amended motion

for relief from and to set aside an agreed judgment pursuant to Mississippi Rule of Civil

Procedure 60(b). Eldon Ladner (Ladner) and his daughter Regina Ladner Davenport

(Davenport) entered into a substitute agreed judgment (agreed judgment) signed October 28,

2008, *nunc pro tunc* to October 14, 2008, and filed in the Chancery Court of Stone County, Mississippi. Ladner and Davenport alleged that they signed the agreed judgment under duress, coercion, and without free will. Ladner and Davenport had served as conservators and/or administrators to the various estates.[1]

¶2. On or about April 7, 2006, Alberta L. O'Neill (O'Neill) filed a motion to remove Ladner and Davenport as conservators and/or administrators of the Estates. The motion also requested that Ladner and Davenport provide an accounting of assets and reimbursement of funds. On or about September 28, 2006, the Chancery Court of Stone County entered an order requiring a detailed accounting. On April 3, 2008, Ladner and Davenport filed an accounting. Ladner and Davenport claimed that they had given their attorney copies of the Estates' documents such as checks. However, their attorney had closed his law practice, and the documents retrieved from his office were incomplete and in disarray.

¶3. A trial began on April 7, 2008, but the trial court continued the proceeding. In the meantime, the agreed judgment had been signed by Ladner and Davenport, providing for payment and execution of certain documents and other obligations, and was entered by the trial court in October 2008. Thereafter, Ladner and Davenport filed an amended motion for relief from and to set aside judgment pursuant to Rule 60(b) in January 2009. After a hearing on the matter, the trial court denied Ladner's and Davenport's motion. We find that the trial court did not err by denying the motion to set aside the agreed judgement, as Ladner and Davenport failed to demonstrate that the agreed judgment had been signed under duress,

---

[1] All the estates at issue will be referred to collectively as "the Estates" unless otherwise indicated in the opinion.

coercion, or without free will. Finding no error, this Court affirms the judgment of the Circuit Court of Stone County.

## FACTS

¶4. Alberta O'Neill requested the removal of Ladner and Davenport from their positions in regard to various estates. Ladner and Davenport had served as co-administrators for the Estate of Lula Mae Davis, deceased, and as co-administrators for the Estate of John Davis, deceased. Ladner had served as the conservator of the Estates of Daniel M. Thompson and Louise Thompson, deceased, and as the administrator of the Estate of Daniel M. Thompson.

¶5. In September 2006, the chancery court entered an order requiring an accounting for the Estates. A trial began on April 7, 2008; however, the matter was held over and continued to a later date. Prior to the new court date, Ladner and Davenport signed an agreed order which was approved by the chancery court and entered in October 2008. Thereafter, on January 30, 2009, Ladner and Davenport filed an amended motion for relief and to set aside the agreed order pursuant to Rule 60(b).

¶6. In their motion, Ladner and Davenport alleged that they were "coerced, under threats of criminal action by the Plaintiffs and other forms of duress, into executing an Agreed Judgment." Because the agreed judgment allegedly had been obtained by duress and coercion and was not the result of "the willful act" of Ladner or Davenport, they requested that the judgment be set aside. In support of their motion, Ladner and Davenport attached affidavits stating that their counsel and the Plaintiffs had threatened criminal action and coerced them into executing the agreed judgment, even though they had engaged in no criminal activity.

3

¶7. On February 2, 2009, the chancery court conducted a hearing. At the hearing, both Ladner and Davenport testified concerning the events leading to their signing the agreed order.

¶8. Davenport testified that she had served as co-conservator of the Davis Estates. She did not serve in any capacity for the Estates of Daniel M. Thompson or Louise Thompson. Ladner was a co-conservator with Davenport of the Davis Estates, and he was the conservator to the Thompson Estates. When asked at what point she felt threatened or felt some threat of criminal charges being brought against her, Davenport stated that it was "through the attorney representing my father and myself." Davenport stated that she and her father had received a copy of the agreed judgment in the mail three or four weeks prior to meeting with their attorney at his office. When they went to their attorney's office, the attorney told Ladner and Davenport that the judgment "was the best thing that we could do."

¶9. Davenport felt that she had to sign the document. She stated that her attorney "had made several comments about an attorney general and an opinion by the attorney general, and we didn't want to go there, and that it would be best if we go ahead and resolve the issue . . . . he brought up attorney general several times." In discussions with her attorney and Ladner, Davenport stated that she understood the consequences of not signing the document to be "possible criminal actions, possible forfeiture of my ability to be able to teach in the community college system or the university system, and that any political aspirations I may have would be terminated." Davenport signed the agreed judgment at their attorney's office.

¶10. Davenport's and Ladner's attorney made an "X" on the document and told Ladner that he needed to sign the document. Davenport described her attorney as normally having a

4

calm demeanor; however, he was upset that day, evidence by his raising his voice several times. She also stated that she did not consent to the entry of the judgment.

¶11. On cross-examination, Davenport admitted that she had had two to three weeks to consider signing the agreed judgment. While she agreed that she had fixed her signature to the document of her own free choice, Davenport denied that she had any free will or that she willingly had signed the agreed judgment. Davenport stated that she had lacked free will because she had the strong understanding that criminal proceedings might be forthcoming. Notwithstanding her perception, Davenport admitted that she had not done anything wrong to garner prosecution.

¶12. Ladner testified that he had agreed to the judgment. When questioned further, Ladner stated that he had "consented for my daughter to sign it." Ladner stated that he had felt that he had to sign the agreement, because of his attorney's statement that "it was in our interest to sign this, and if we didn't do so, that [Davenport] could lose her job, be sent to jail, and several other things."

¶13. On cross-examination, Ladner testified that he did not sign the agreed judgment at his attorney's office. Rather, Ladner signed the agreed judgment at his house sometime later. When questioned, Ladner could not recall the specific date that he had signed the agreed judgment. Nonetheless, on the day that Ladner signed the agreed judgment, his attorney was not present, and Ladner stated that no one had threatened him that day. Davenport was the only person present when Ladner signed the agreed judgment. When asked whether he had signed the agreement of his own free will, Ladner stated "Yes, sir, I did, on behalf of my

5

daughter." Ladner also stated that he knew the contents of the agreed judgment when he signed it.

¶14. Following arguments and testimony on the matter, the chancellor denied Ladner's and Davenport's motion for relief from and to set aside judgment. At the hearing the chancellor stated:

> All right. This is basically an issue of credibility at this point. And I just do not find that the testimony that's been given to me today rises to the level of anything that I think would constitute sufficient coercion or improper conduct to set aside the judgment that was agreed to. So the motion's denied.

The chancellor followed the on-the-record ruling with a written judgment.

## DISCUSSION

¶15. An abuse of discretion is the standard of review applied by appellate courts when reviewing a chancellor's decision. *Corporate Mgmt., Inc. v. Greene County*, 23 So. 3d 454, 459 (Miss. 2009); *Rotenberry v. Hooker*, 864 So. 2d 266, 269 (Miss. 2003). We do not disturb a chancellor's factual findings "when supported by substantial evidence unless . . . the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard." *Greene County*, 23 So. 3d at 459 (quoting *Biglane v. Under The Hill Corp.*, 949 So. 2d 9, 13-14 (Miss. 2007)). On questions of law, appellate courts use a de novo standard of review. *Id*.

¶16. Rule 60 states:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> > (1) fraud, misrepresentation, or other misconduct of an adverse party;

6

(2) accident or mistake;

(3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;

(6) any other reason justifying relief from the judgment.

Miss. R. Civ. P. 60. "A party is not entitled to relief merely because he/she is unhappy with the judgment." *Jenkins v. Jenkins*, 757 So. 2d 339, 343 (Miss. Ct. App. 2000) (citing *Stringfellow v. Stringfellow*, 451 So. 2d 219, 220 (Miss. 1984)). Rule 60 (b)(6) grants relief from a judgment for "extraordinary and compelling circumstances." *Porter v. Porter*, 23 So. 3d 438, 450 (Miss. 2009) (quoting *Briney v. United States Fid. & Guar. Co.*, 714 So. 2d 962, 966 (Miss. 1998)). When considering Rule 60(b)(6) motions, appellate courts have a limited review to determine whether the sound discretion of the trial court has been abused. *Stringfellow*, 451 So. 2d at 221. "When ruling on such motions a balance must be struck between granting a litigant a hearing on the merits with the need and desire to achieve finality in litigation." *Id*.

### A. Duress

¶17. Ladner and Davenport seek relief from an agreed judgment under Rule 60(b)(6), claiming that the agreed judgment was signed without their free will and, therefore, under duress. Both Ladner and Davenport allege that they were coerced into signing the agreed judgment under false threats of criminal action and other economic and personal duress. O'Neill argues that Ladner and Davenport failed to show any duress. In addition, O'Neill

7

asserts that no evidence showed that she or her attorney ever made any threats to Ladner or Davenport to induce them to sign the agreed judgment.

¶18.    In *Askew v. Askew*, 699 So. 2d 515, 518 (Miss. 1997), an appeal from a final agreed judgment of divorce, this Court defined duress as follows:

> To constitute duress by threats the actor's manifestation must be made for the purpose of coercing the other; must have for its object the securing of undue advantage with respect to the other; must be of such a character that it is adapted to overpower the will of the other and is reasonably adequate for the purpose; must in fact deprive the other to act to his detriment. *Libel v. Libel*, 5 Kan. App. 2d 367, 616 P.2d 306 (1980).

*Askew*, 699 So. 2d at 518.

¶19.    Duress strikes at whether a party actually consented to a contract. *Duckworth v. Allis-Chalmers Mfg. Co.*, 247 Miss. 198, 203, 150 So. 2d 163, 165 (1963). A dominant party must conduct himself or herself in a manner that overrides the volition of the weaker party. *Id*. To this end, a deprivation of a party's free exercise of his or her own will constitutes duress. *Id*. But duress cannot be established with mere insistence by one party of a legal right to which the other party yields. *Id*. Likewise, duress cannot be claimed when a party makes a lawful demand or exercises or threatens to exercise a legal right. *Id*. "It should go without saying, however, that provisions in contracts contrary to public policy or where obtained by overreaching duress or undue influence are unenforceable." *First Nat'l Bank of Vicksburg v. Caruthers*, 443 So. 2d 861, 864 n.3 (Miss. 1983) (citations omitted).

¶20.    In *Askew*, this Court found no duress, other than normal stress associated with any divorce proceeding, where a husband had signed a divorce agreement. *Askew*, 699 So. 2d at 518. "Thus, while there may be proof that [the husband] did suffer emotionally during the

8

proceedings, there is no suggestion of a legal basis to conclude that the duress he experienced was sufficient to set aside the agreed judgment." *Id*.

¶21. Ladner and Davenport claim that they signed the agreed judgment under duress and without free will. Davenport testified that she had received the agreed judgment in the mail. A few weeks later, she and her father met at their attorney's office. Davenport stated that she had felt threatened by potential criminal charges due to discussions with her attorney.

¶22. Davenport's attorney stated that it was in Davenport's and Ladner's best interest to resolve the matter. According to Davenport, her attorney mentioned attorney general opinions, and he stated that "we didn't want to go there." It was Davenport's understanding that she could face criminal action, loss of her job, and a loss of any political aspirations if she did not sign the agreed judgment. Davenport signed the agreed judgment at her attorney's office that day; however, due to her fear of potential criminal action, she stated that she had no free will and did not willingly sign the agreed judgment.

¶23. Ladner testified that he signed the agreed judgment sometime after the meeting with Davenport and their attorney, in the presence of Davenport only. Due to Davenport potentially losing her job, going to jail, and other things, Ladner stated that he had felt that he had to sign the agreed judgment. Ladner stated that he had known the contents of the agreed judgment when he signed it, and no one had threatened him when he signed it.

¶24. As discussed more fully in the next issue, Davenport and Ladner do not dispute that the agreed judgment was a contract. However, Ladner and Davenport never stated that O'Neill had made any threats or coerced them in any way. Indeed, Ladner's and Davenport's hearing testimony is devoid of any mention of O'Neill.

9

¶25.   Davenport stated that she had felt threatened by potential criminal prosecution, loss of her job, and jail by comments made by her own attorney. Likewise, Ladner stated that he had signed the agreed judgment because of discussions with his attorney concerning Davenport's possible loss of her job, jail, or other things. In other words, Ladner and Davenport claim that their own attorney was the dominant party who overpowered their volition, depriving them of the exercise of their own free will. *See **Duckworth***, 247 Miss. at 203, 150 So. 2d at 165. Ladner and Davenport claim that they acted in good faith by giving a prior attorney Estate documents, and that there was no legitimate threat of criminal prosecution. Nonetheless, Ladner and Davenport claim that their lawyer bullied them for his own reasons.

¶26.   Ladner and Davenport produced no evidence to demonstrate that O'Neill had threatened or coerced them into signing the agreed judgment. The testimony showed that Davenport and Ladner received legal advice from their own attorney on the matter. After discussing the matter with her father and her attorney, Davenport signed the agreed judgment at her attorney's office. Sometime later, Ladner signed the agreed judgment at his home in the presence of Davenport without any threats from anybody. An attorney's advice to his clients is simply that, advice. Based on the evidence presented, the trial court did not abuse its discretion by denying the amended motion for relief from and to set aside an agreed judgment.

## B.    Consideration

¶27.   Ladner and Davenport assert that the agreed judgment is void for lack of consideration. While they contend that no consideration was given for the agreed judgment, they also argue

that the only consideration that could be inferred was non-prosecution or avoidance of other related consequences. Along with this argument, Davenport and Ladner maintain that, because they were not criminally liable, as their testimony revealed their good-faith actions, any alleged consideration was nonexistent. Had Ladner and Davenport not had duress placed on them, they contend that they would have had the opportunity to proceed to trial and offer evidence of their proper handling of estate matters. Ladner and Davenport contend that they received nothing in return for signing the agreed judgment, and due to Davenport's very limited role in the Estates, lack of prosecution would not constitute consideration.

¶28.   This Court has applied contract law to negotiated settlement agreements. *Chantey Music Publ'g, Inc. v. Malaco, Inc.*, 915 So. 2d 1052, 1056 (Miss. 2005). Settlements are contracts. *Hastings v. Guillot*, 825 So. 2d 20, 23 (Miss. 2002). Parties to a settlement must have a meeting of the minds. *Id*. "The law favors the settlement of disputes by agreement of the parties and, ordinarily, will enforce the agreement which the parties have made, absent any fraud, mistake, or overreaching." *Malaco*, 915 So. 2d at 1055.

¶29.   Generally, an enforceable contract consists of an offer, an acceptance of that offer, and consideration. *Krebs by and through Krebs v. Strange,* 419 So. 2d 178, 181 (Miss. 1982). In order for a contract to be valid, six elements must be present: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Rotenberry*, 864 So. 2d at 270 (quoting *Lanier v. State*, 635 So. 2d 813, 826 (Miss. 1994) (overruled on other grounds)).

11

¶30. Consideration has been defined as "(a) an act other than a promise, or (b) a forbearance, or (c) the creation, modification or destruction of a legal relation, or (d) a return promise, bargained for and given in exchange for the promise." *City of Starkville v. 4-County Elec. Power Ass'n*, 819 So. 2d 1216, 1220 (Miss. 2002) (citing *Lowndes Coop. Ass'n v. Lipsey*, 240 Miss. 71, 126 So. 2d 276, 277-78 (1961)).

¶31. The agreed judgment provided that Ladner and Davenport would pay funds to the Estates and would release claims against the Estates, and that Ladner would execute and transfer certain interests in the Estates. Additionally, the agreed judgment stated in part:

> The Estate of Daniel Thompson and Louise Thompson, Estate of Lula Mae Davis and Estate of John Davis release any and all claims, rights, title, and any claims they may have against Eldon Ladner, Regina Davenport or any of Eldon Ladner's family. The Judgment shall be a full and complete release of all claims these Estates have against Eldon Ladner and/or Regina Davenport jointly and severally or individually and no claims can ever be made in the future against Eldon Ladner and/or Regina Davenport and/or by any of the heirs of these deceased persons who might have an interest in any of the four estates. Eldon Ladner and Regina Davenport releases (sic) all claims or rights they may have against the Estates as above set out and Alberta O'Neill and Edward Ladner individually. This includes the Estate of Palma Ladner. This Judgment may be pled as a total and complete bar to any action brought [by] either party against the other including Alberta O'Neill or Edward Ladner. This Judgment settles the entire matter between these parties, including Alberta O'Neill and Edward Ladner.

¶32. By the terms of the agreed judgment, both parties gave adequate consideration to forego further litigation. The agreed judgment provided for a release by the Estates, O'Neill, and Edward Ladner against any claims they had against Ladner, Davenport, and Ladner's family, and a release from any future claims. Likewise, Ladner and Davenport released all claims against the Estates, O'Neill, and Edward Ladner. The terms also provided a bar to any action brought by any opposing parties. *See City of Starkville*, 819 So. 2d at 1220.

12

¶33. Furthermore, the agreed judgment met all the required elements of a contract. Ladner and Davenport contracted with the Estates through O'Neill and Edward Ladner. Ladner and Davenport agreed to relinquish funds, and Ladner agreed to relinquish any interest in the Estates in exchange for an agreement for no further litigation. The agreed judgment also served as a bar to any attempt of future action by any of the opposing parties against each other. The agreement was definite and was reduced to writing with specific terms. None of the parties claimed any inability to have the legal capacity to contract. All parties agreed to the terms by mutual assent, and no legal prohibition precluded contract formation. *See Rotenberry*, 864 So. 2d at 270.

¶34. As for Ladner's and Davenport's assertion that, but for the duress, they could have proceeded to trial and presented evidence of their proper handling of the Estates, we find that this argument is without merit. At the time of the agreed judgment, the parties already were in the course of trial proceedings. Between the initial trial proceedings and the continued date for further proceedings, the parties made their settlement. Thus, Ladner and Davenport had the opportunity to continue the proceeding and give evidence of the actions taken on behalf of the Estates. However, they chose a settlement in the interim period. This issue is without merit.

## CONCLUSION

¶35. For the above reasons, the Chancery Court of Stone County did not err by denying Ladner and Davenport's motion for relief from and to set aside an agreed judgment under Rule 60(b). This Court affirms the judgment of the Chancery Court of Stone County.

¶36. **AFFIRMED.**

13

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**