# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CP-00240-SCT

*THE MATTER OF THE PRESUMPTION OF*
*DEATH OF JANITOR AND MENTAL PATIENT*
*AUDRAY JOHNSON: ASHLEY BIONTE*
*JOHNSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/28/2020 |
| TRIAL JUDGE: | HON. TIFFANY PIAZZA GROVE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | ASHLEY BIONTE JOHNSON (PRO SE) |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 01/14/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.     Ashley Bionte Johnson filed a petition for presumption of death and requested that the chancellor presume her father, Audray Johnson, dead.  The chancellor denied Ashley's petition, and Ashley timely appealed.  Because Audray has not been absent from and has not concealed himself in this state for seven years, the chancellor's denial of the petition is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2.     On December 9, 2019, Ashley filed a pro se "petition for presumption of death of missing individual believed to be dead."  She claimed that her father, Audray, had been gone from his physical body for more than seven years and should be presumed dead.

¶3.    Audray, born July 20, 1968, was employed as a janitor.  Audray suffers from mental illness and has been treated for dissociative identity disorder.[1]  In 2017, Audray changed his name from Audray Johnson to Akecheta Andre Morningstar.

¶4.    In February 2020, a hearing was held on Ashley's petition.[2]  Morningstar was present at the hearing and testified regarding Audray's death.  According to Morningstar, Audray's spirit expired more than seven years ago, and Morningstar now occupies Audray's physical body.  Morningstar testified that he is "an ambassador . . . a hybrid . . . part angel, part human" who originated "from the heavens."  He explained that he was "dispatched" to earth "to save the world."  Although Morningstar admits that he occupies Audray's physical body, he asserts that he "shouldn't have the responsibility of taking care of a dead man's family."

¶5.    Morningstar denied being Audray and noted several differences between himself and Audray including skin tone, height, and liver function.  He testified that the "Great Spirit . . . reconfigured the DNA and . . . shortened him a little bit," explaining that he is "a little bit shorter than [Audray]."

¶6.    While Morningstar testified that he is not Audray, he acknowledged that they share the same social security number.  Morningstar further acknowledged that he lives at Audray's last known residence with Audray's wife and daughter.

¶7.    After the hearing, the chancellor denied the petition.  In her final judgment, the

---

[1] Ashley denies that her father was treated for dissociative identity disorder.  She explains, "The truth of the matter is that my dad was treated for [b]ipolar [s]chizophrenia.  And that is where the problem lay.  He was treated for the wrong illness, and the potent medicine the group of [d]octors kept feeding him for 18 years, poisoned his guts out."

[2] Ashley represented herself at the chancery court hearing.

chancellor stated:

> The court takes judicial notice of the fact that Audray Johnson petitioned this court in October of 2017 and obtained an order changing his legal name from Audray Johnson to Akecheta Andre Morningstar. The court cannot find Audray Johnson has been gone from this state for seven years successively without being heard of when Audray Johnson presented himself to the court for a name change in 2017.

¶8.     Ashley now appeals[3] and raises the following four issues:

(1)     The accuracy or validity of [the chancellor's] determination that the body or parts of it being on top of the ground, having animation, is the deciding factor if a person is to be declared "alive."

(2)     For this Honorable Court to rule on an unprecedented issue concerning a "clone," so to speak, negating his right to establish his "True identity" by coming before the Hinds County Chancery Court in 2017, posing as the deceased janitor and mental patient Audray Johnson, in order to obtain the proper name and identity that was assigned to him by the Great Spirit of the heavens - JEHOVAH GOD after he (Dr. Morningstar) was created by whom the world refer to as aliens. But they are, in fact, Angelic Creatures.

(3)     Does the current provision[] pertaining to the Presumption of Death Statue (Civil Code 13-1-23) of Mississippi cover[] all possible scenarios??- namely, if so called [a]liens were involved in the disappearance of the deceased individual.

(4)     Did the [chancery court] [c]lerk . . . act[] with any improprieties to deny the Petitioner a fair hearing?

## STANDARD OF REVIEW

¶9.     "On appeals from chancery court, this Court employs a limited standard of review." *Venture Sales, LLC v. Perkins*, 86 So. 3d 910, 913 (Miss. 2012) (citing *Corp. Mgmt. v. Greene Cnty.*, 23 So. 3d 454, 459 (Miss. 2009)). "We review a chancellor's decision for

---

[3] Ashley appeals pro se.

3

abuse of discretion." ***Id.*** (citing ***Ladner v. O'Neill (In re Estate of Davis)***, 42 So. 3d 520, 524 (Miss. 2010)). "We will not disturb a chancellor's factual findings 'when supported by substantial evidence unless . . . the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard.'" ***Id.*** (alteration in original) (quoting ***In re Estate of Davis***, 42 So. 3d at 524). "This Court will affirm a chancellor's decision when it is supported by substantial credible evidence." ***Id.*** (citing ***Reddell v. Reddell***, 696 So. 2d 287, 288 (Miss. 1997)). "Questions of law are reviewed de novo." ***Id.*** (citing ***Biglane v. Under the Hill Corp.***, 949 So. 2d 9, 14 (Miss. 2007)).

## DISCUSSION

I. *Whether the chancellor erroneously denied the petition for presumption of death.*

¶10. Ashley first argues that the chancellor erred by denying her petition for presumption of death. Under Mississippi Code Section 13-1-23 (Rev. 2019),

> Any person who shall remain beyond the sea, or absent himself from this state, or conceal himself in this state, for seven years successively without being heard of, shall be presumed to be dead in any case where his death shall come in question, unless proof be made that he was alive within that time. Any property or estate recovered in any such case shall be restored to the person evicted or deprived thereof, if, in a subsequent action, it shall be proved that the person so presumed to be dead is living.

¶11. The record reflects that Audray presented himself to the chancery court for a name change approximately three years ago in October 2017. Although Audray changed his name to Morningstar, his residence and, moreover, his social security number remains the same. As the chancellor properly noted,

> The reality is that we are identified by our physical body. Our physical body

4

is given a birth certificate and social security number to identify our person and ultimately a death certificate. Our physical body can be identified by our DNA, fingerprints, and physical appearance. It is uncontested that the physical body of Audray Johnson is the body Morningstar now occupies.

¶12. The statutory "presumption of death ends when the person whose death is in [issue] is shown to be alive." *Johnson v. Lee*, 212 Miss. 603, 606, 55 So. 2d 140, 141 (Miss. 1951) (citing *Watson v. Watson*, 177 Miss. 767, 171 So. 701, 703 (Miss. 1937)). Because Audray has not been absent from or concealed himself in this state for seven years successively without being heard of, the chancellor did not err by denying Ashley's petition for presumption of death.

¶13. Ashley further argues that the chancellor "refused to view" the evidence she presented at the hearing. But the record contradicts this assertion. At the hearing, the chancellor noted that she had reviewed everything that had been filed, including Morningstar's affidavit. The transcript shows that the chancellor considered all of the evidence, including the exhibits Ashley and Morningstar presented at the hearing.

¶14. Ashley next argues that the chancellor "allowed school age children to be present in the [c]ourtroom" and "allowed the youngsters to grin and make noise while . . . Morningstar gave his testimony." But Ashley fails to explain how the children's presence was prejudicial or how their presence affected the outcome of this case. Moreover, the record reflects that at no time did Ashley or Morningstar object to the children's presence or ask that the children leave the courtroom.

¶15. Ashley last argues that the chancellor "didn't ask any questions or give [her] a chance to rebut after [Morningstar's] testimony was over." But the record shows that after Ashley's

5

examination of Morningstar, the chancellor asked further questions. Following Morningstar's testimony, Ashley moved to admit into evidence one final exhibit and then "rest[ed] her case." There is no indication in the record that Ashley attempted or requested to rebut Morningstar's testimony and was denied.

     II.    *Whether Morningstar was denied his right to establish his "[t]rue identity."*

¶16. At the hearing, Morningstar testified that "[Audray] was cloned . . . [and that] the people who wanted to turn him into a monster wanted to clone him, but God got to his body first and cloned him." Ashley asks this Court "to rule on an unprecedented issue concerning a 'clone' . . . negating his right to establish his '[t]rue identity' by coming before the [chancery court] in 2017 . . . in order to obtain the proper name and identity that was assigned to him by the Great Spirit of the heavens . . . ."

¶17. This Court is unclear as to what relief Ashley seeks. Ashley fails to cite any case law or authority in support of her argument. "This Court is not bound to address assertions of error where a party fails to cite caselaw in support of their argument." ***Nicholson ex rel. Gollott v. State***, 672 So. 2d 744, 751 (Miss. 1996) (citing ***Century 21 Deep S. Props., Ltd. v. Corson***, 612 So. 2d 359, 370 (Miss. 1992)).

¶18. Notably, the record shows that Audray was allowed to change his name to Morningstar. Thus, Audray was not denied "his right to establish his '[t]rue identity'" but was instead allowed "to obtain the proper name and identity that was assigned to him by the Great Spirit of the heavens."

     III.    *Whether the presumption-of-death statute includes aliens.*

6

¶19. Ashley asserts that "[t]he laws that are on the books concerning the presumption of death of persons of this State appl[y] to one dimensional beings of this State. The laws don't take into account that so-called 'aliens' are involved in the disappearance." She claims that Section 13-1-23 fails to cover the possible scenario that "[a]liens were involved in the disappearance of [Audray]."

¶20. Once again, this Court is unclear as to what relief Ashley seeks. Assuming Ashley seeks to amend Section 13-1-23 to include aliens or the possible scenario of alien abduction, she must address such amendment with our Legislature, as this Court does not have the authority to create new law. Alternatively, assuming Ashley seeks this Court's interpretation of Section 13-1-23 and whether it includes or should include "activities of the [s]upernatural," such interpretation will not be addressed because she has failed to include any case law or authority in support of her position. *Nicholson*, 672 So. 2d at 751 (citing *Corson*, 612 So. 2d at 370).

> IV.    *Whether the chancery clerk's actions violated Ashley's right to*
> *a fair hearing.*

¶21. Ashley last asserts that the chancery clerk "performed criminal acts" and violated her right to a fair hearing. Specifically, Ashley claims that "[e]vidence that was filed by [her] disappeared from the docket," that "other pertinent evidence was defaced that could shed light on proving [her] case," and that "on an occasion that [she] sent . . . Morningstar to check on the filings, he was subliminally threatened by the [s]heriff deputies by them rushing in on him when he showed up."

¶22. Ashley fails to explain what evidence disappeared or was defaced, and she further

7

fails to explain how the chancery clerk's alleged actions prejudiced her case. The record shows that in support of her petition, Ashley presented testimony and admitted into evidence numerous exhibits, all of which were considered by the chancellor. Ashley fails to show that the chancery clerk's alleged actions were criminal or that she was denied a fair hearing.

## CONCLUSION

¶23. The record reflects that Audray has not been absent from or concealed himself in this state for seven years successively without being heard of. Miss. Code Ann. § 13-1-23. Accordingly, the chancellor's final judgment denying the petition for presumption of death is affirmed.

¶24. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**