# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-00296-SCT

*IN THE ADOPTION OF A.M., A MINOR: A.H.*

*v.*

*K.M. AND J.J.*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/02/2020 |
| TRIAL JUDGE: | HON. DEBORAH J. GAMBRELL |
| TRIAL COURT ATTORNEYS: | JOHN D. SMALLWOOD |
| | GEORGE W. SCHMIDT, II |
| | KELLY LEE STRIBLING |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | GEORGE W. SCHMIDT, II |
| ATTORNEYS FOR APPELLEES: | K.M. (PRO SE) |
| | J.J. (PRO SE) |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 08/05/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1.    This case arises from a custody dispute between a natural mother and an adoptive mother. The chancellor allowed the natural mother to withdraw her surrender of parental rights and consent to adoption. The chancellor also found that the natural mother was under duress when she signed the surrender and revoked the order granting temporary custody of the child to the adoptive mother. This Court affirms the chancellor's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. In November of 2018, K.M. ("Kim") was pregnant with A.M. ("Amy").[1] She decided to contact Lifetime Adoption Agency to consider placing Amy for adoption. Her reason was that she had hoped to be married before having a second child. Kim did not follow through with the adoption at that time.

¶3. Amy was born on December 10, 2018, in Hattiesburg, Mississippi. Kim is also the mother of an older daughter from a previous relationship, who lives with Kim when she is not with her father. According to Kim, J.J. ("Jim") is Amy's biological father.

¶4. In April 2019, four months after Amy's birth, Kim lost her job and remained unemployed for three months.

¶5. In July 2019, Kim once again considered Amy's adoption and contacted Lifetime for the second time. Kim looked through the adoptive parent profiles that Lifetime provided and chose A.H. ("Amanda"), a Georgia resident, as the person to adopt Amy.

¶6. Lifetime told Amanda of this decision, and Amanda received a call from Kim that confirmed her selection. Lifetime explained to Amanda that she would need to hire a Mississippi attorney to draw up the necessary legal papers and provided a list of attorneys. Amanda chose Attorney Dan Davis.

¶7. Davis arranged a meeting between Amanda and Kim. They met in Hattiesburg on July 27, 2019. When Kim arrived, she placed Amy, who was seven months old at the time, in Amanda's lap. Kim then went over the required paperwork with Davis. Davis recorded the conversation. He informed Kim that the adoption would terminate her parental rights in

---

[1] We use fictitious names instead of initials for the parties.

2

Amy and that her decision was knowing, intelligent, and voluntary.

¶8. Davis presented Kim with a document that was titled "Surrender of Parental Rights and Consent to Adoption." Kim signed the surrender. Then, Kim provided Amanda a basket of Amy's clothes and escorted them to their car. Kim exchanged her goodbyes, and Amanda drove away with Amy.

¶9. Two days later, Davis filed the petition for adoption. The petition included Kim's executed surrender. On July 30, 2019, the chancellor entered an "Order Granting Temporary Custody" that granted custody of Amy to Amanda and allowed her to take Amy to Georgia. As part of the order, the chancellor held that "the surrender of parental right form signed by the mother complied with applicable statues, and is accepted by the Court pursuant to Miss. Code Ann. § 93-15-111." Further, the chancellor ruled that "[Amanda] is hereby granted temporary custody of the child."

¶10. On August 21, 2019, the chancellor entered a fiat that set the hearing on "the termination of parental rights and the adoption" for October 2, 2018.

¶11. On August 26, 2019, Kim filed her "Withdrawal of Consent to Voluntary Surrender of Parental Rights." In this document, Kim stated that she withdrew "any voluntary surrender of parental rights" and "her consent to adoption as she no longer wishes to give up her child for adoption."

¶12. On September 4, 2019, through her attorney, Kim filed her "Response to Petition for Adoption." Then, Kim filed a "Motion for Temporary Relief" and asked the court to "restore custody" of Amy to Kim or, alternatively, to allow visitation until trial. The motion for

temporary relief was noticed for hearing on October 2, 2019.

¶13. On September 27, 2019, the chancellor entered an order appointing a guardian ad litem.

¶14. At the October 2, 2019 hearing, Kim, Amanda, and their attorneys appeared. The chancellor considered the fact that Amy's biological father—Jim—had not been personally served with process. Davis indicated that he had attempted to contact Jim based on the only information Kim provided him, a telephone number, but that he was unsuccessful. Davis served Jim with process by publication that was published in a Poplarville newspaper on August 28, September 4, and September 11, 2019. Davis received no response from Jim.

¶15. Kim revealed that Jim had called her before the hearing on his cell phone, and Kim informed him of the hearing. Jim provided Kim his new address. As a result, the chancellor entered an order for continuance. The order also announced that the parties would undertake discovery and would serve Jim with process at his new address.

¶16. On October 18, 2019, George Schmidt entered an appearance as the attorney for Amanda.

¶17. On January 30, 2020, Amanda filed a motion to strike. In the motion, Amanda argued that based on the surrender and the temporary-custody order, the court had terminated the parental rights of Kim, and she no longer had standing to challenge the adoption. Amanda argued that "Paragraph 4 of the temporary order states, 'The surrender of parental rights form signed by the mother complies with all applicable statutes and is accepted by the court pursuant to Miss. Code Ann. § 93-15-111.'" Further, "Miss. Code Ann. § 93-15-111(2)

4

states, '[t]he court's acceptance of the parent's written voluntary surrender of parental rights terminates all of the parent's parental rights to the child, including but not limited to the right to control or withhold consent to adoption.'"  Amanda applied to the chancellor to strike Kim's pleadings and to remove her and her counsel from any further hearings or proceedings on the adoption.

¶18.    Also, on January 30, 2020, the court held a hearing consistent with the order of continuance dated October 2, 2019.  The chancellor determined that the case was not ready for trial because process was not complete on Jim, and it was impossible to proceed to trial. On February 24, 2020, the chancellor also made the following ruling:

> IT IS HEREBY ORDERED AND ADJUDGED that paragraph 3 of the Order Granting Temporary Custody [#5] should not have been included therein and is hereby dissolved.
>
> IT IS FURTHER ORDERED AND ADJUDGED that paragraph 4 of the Order Granting Temporary Custody [#5] should not have been included therein and is hereby rescinded and dissolved.  This Court has made no finding on the acceptance or validity of the Surrender of Parental Rights and Consent to Adoption signed by Ms. [Kim].  Additionally, the Withdrawal of Consent to Voluntary Surrender of Parental Rights and Adoption [#9] remains under advisement with this Court.
>
> IT IS FURTHER ORDERED AND ADJUDGED that Ms. [Amanda] shall remain with temporary custody of the minor child until further order of this Court.
>
> IT IS FURTHER ORDERED AND ADJUDGED that the Court directed a limited visitation schedule for at least one day a month be worked out amongst the parties as Ms.[Amanda] resides in the Atlanta, Georgia area and Ms. [Kim] in Hattiesburg, MS.  The parties in conjunction with the Guardian ad litem have confirmed and the Court hereby orders the following visitation schedule until the next hearing . . . .
>
> IT IS FURTHER ORDERED AND ADJUDGED that this matter is set for

5

Rule 81 hearing on Monday, March 30, 2020 at 9:00 AM at the Forrest County Chancery Courthouse in Hattiesburg, Mississippi for purposes of a return date for [Jim] upon service of process on him.

¶19. A summons was issued the next day for service on Jim to appear at the March 30, 2020 hearing. In March 2020, the Jackson County Sheriff's Department attempted to serve Jim at the address Kim provided but discovered that the street number did not exist. The sheriff's office then tried to call the phone number but received no answer. The sheriff's office was able to procure another potential address for Jim in Hattiesburg, but it too proved futile.

¶20. Although the chancellor's January 30, 2020 order set the case for trial on March 30, 2020, the trial never occurred. Instead, on March 2, 2020, the chancellor issued an "Opinion and Order on Withdrawal of Consent and Surrender." The chancellor concluded:

> The Court finds that the Surrender of Parental Rights and Consent to Adoption executed on July 27, 2019 by Respondent [Kim], and attached to the Petition for Adoption filed herein on July 29, 2019 as Exhibit "A" was executed without fraud, duress, or undue influence on the part of the Petitioner or counsel for Petitioner; however, the Court in reviewing the pleadings at the time of the January hearing and subsequent filings, believes that the surrender was executed while the biological mother was under duress, both economical and personal in nature, in that, in her perception, all avenues to provide for her child, short of adoption had been exhausted. As referenced in [***M.M. v. New Beginnings of Tupelo, Inc. (In re Adoption of J.M.M.)***, 796 So. 2d 975 (Miss. 2001)], the Court is mindful that the subordination of one's will and the destruction of one's free agency can happen by virtue of a number of factors, and the Court deems that to have happened here.
>
> . . . .
>
> It is therefore the Order of the Court that the Surrender of Parental Rights and Consent to Adoption executed on July 27, 2019 by Respondent [Kim], and attached to the Petition for Adoption filed herein on July 29, 2019 as Exhibit "A", may be and is hereby WITHDRAWN per the Withdrawal of Consent

6

filed herein by [Kim] on August 26, 2019. As such, it is also necessary to set aside the Order Granting Temporary Custody entered herein on July 30, 2019. The child who is the subject of this matter shall be returned to the custody of Respondent [Kim] forthwith, and the Petition for Adoption is hereby DISMISSED.

¶21. On March 11, 2020, Amanda filed a "Motion for New Trial." Then, on March 12, 2020, Amanda filed a "Motion for Relief from Order and for Other Relief." On March 13, 2020, Kim filed a "Motion to Compel Production of Minor Child and for Sanctions." A hearing was held on March 16, 2020. On March 17, 2020, the chancellor entered an order that denied Amanda's motion for new trial and motion for relief from order and for other relief and denied in part and granted in part Kim's motion to compel production of minor child and for sanctions. The chancellor allowed Amy to remain in Amanda's custody due to the COVID-19 pandemic restrictions. This appeal followed.

## STANDARD OF REVIEW

¶22. "[T]he standard of review and statutory basis for termination of parental rights is quite limited." *In re Adoption of J.M.M.*, 796 So. 2d at 978. "A chancellor's findings will not be disturbed unless [s]he was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *C.L.B. v. D.G.B. (In re Adoption of C.L.B.)*, 812 So. 2d 980, 985 (Miss. 2002) (quoting *Rich v. Moore (In re Estate of Johnson)*, 735 So. 2d 231, 236 (Miss. 1999)). "[T]his Court does not ask how it would have decided the case *ab initio*; rather, we examine whether credible proof exists to support the chancellor's findings of fact by clear and convincing evidence." *K.D.F. v. J.L.H.*, 933 So. 2d 971, 975 (Miss. 2006) (citing *S.N.C. v. J.R.D.*, 755 So. 2d 1077, 1080 (Miss. 2000)). "Questions of law are reviewed under the

7

de novo standard." ***F.D.P. v. J.S.B. (In re Adoption of J.E.B.)***, 822 So. 2d 949, 951 (Miss. 2002) (citing ***Dep't of Hum. Servs. v. Gaddis***, 730 So. 2d 1116, 1117 (Miss. 1998)).

## ANALYSIS

¶23.    Amanda argues that (1) Kim lacked standing to file a withdrawal of consent to voluntary surrender of parental rights and adoption after the chancellor found that the surrender had complied with applicable statutes; (2) the court erred when it determined that Kim's loss of employment and possible eviction perhaps constituted duress despite no fault on behalf of Amanda or her counsel; and (3) the court erred when it rescinded its order six months after it accepted the surrender.

### 1.    *Whether Kim had standing to withdraw her surrender.*

¶24.    Amanda's first issue on appeal is dispositive.  The Court must consider whether Kim had standing to withdraw her surrender.  This question is complicated because the chancellor did in fact enter an order that said the surrender complied with all applicable statutes, and the chancellor accepted it under Mississippi Code Section 93-15-111 (Rev. 2018).

¶25.    This Court has held that once parental consent is given, it is irrevocable absent sufficient legal grounds established by clear and convincing evidence.  ***L.T. v. J.H. (In re Adoption of P.B.H.)***, 787 So. 2d 1268, 1272 (Miss. 2001); *see **Grafe v. Olds***, 556 So. 2d 690 (Miss. 1990); ***C.C.I. v. Natural Parents***, 398 So. 2d 220 (Miss. 1981).  In ***Grafe***, this Court addressed whether a natural parent could revoke her consent fourteen months after the child had been placed with the prospective adopted parents.  556 So. 2d at 693.  This Court considered Section 93-17-7 which, at that time, read:

8

No infant shall be adopted to any person if either parent, after having been summoned, shall appear and object thereto before the making of a decree for adoption, unless it shall be made to appear to the court from evidence touching such matters that the parent so objecting had abandoned or deserted such infant or is mentally, or morally, or otherwise unfit to rear and train it, including, but not limited to, being within any of the grounds requiring termination of parental rights as set forth in subsections (2) and (3)(a), (b), (d) or (e) of Section 93-15-103 in either of which cases the adoption may be decreed notwithstanding the objection of such parent, first considering the welfare of the child, or children, sought to be adopted. *Provided, however, the parents shall not be summoned in the adoption proceedings nor have the right to object thereto if the parental rights of the parent or parents have been terminated by the procedure set forth in Sections 93-15-101 through 93-15-111*, and such termination shall be res judicata on the question of parental abandonment or unfitness in the adoption proceedings.

Miss. Code Ann. § 93-17-7 (Supp. 1990) (emphasis added). The Court also considered the then controlling statute, Section 93-15-103(2):

(2) ***The rights of a parent*** *with reference to a child, including parental rights to control or withhold consent to an adoption*, and the right to receive notice of a hearing on a petition for adoption, ***may be relinquished and the relationship of the parent and child terminated by the execution of a written voluntary release***, *signed by the parent, regardless of the age of the parent.*

Miss. Code Ann. § 93-15-103(2) (Supp. 1990) (emphasis added).

¶26. In *Grafe*, this Court held that the plain meaning of these statutes and judicial interpretations meant that a "written voluntary release, or consent by the parent, terminates the parental rights and thereafter, no objection to the adoption from the natural parent may be sustained." *Grafe*, 556 So. 2d at 694 (citations omitted).

¶27. The Legislature revised the law after *Grafe*. In 2016, the Legislature passed House Bill 1240, the Mississippi Termination of Parental Rights Law, in order to reform parental-rights terminations. *See* H.B. 1240, Reg. Sess., 2016 Miss. Laws ch. 431, § 3 (effective Apr.

9

18, 2016).

¶28. Section 93-17-7 now provides:

(1) No infant shall be adopted to any person if a parent whose parental rights have not been terminated under the Mississippi Termination of Parental Rights Law, after having been summoned, shall appear and object thereto before the making of a decree for adoption. *A parent shall not be summoned in the adoption proceedings nor have the right to object thereto if the parental rights of the parent have been terminated by the procedure set forth in the Mississippi Termination of Parental Rights Law (Section 93-15-101 et seq.),* and the termination shall be res judicata on the question of parental abandonment or unfitness in the adoption proceedings.

(2) No person, whether claiming to be the parent of the child or not, has standing to object to the adoption if:

(a) A final judgment for adoption that comports with all applicable state and federal laws has been entered by a court; and

(b) Notice to the parties of the action, whether known or unknown, has been made in compliance with Section 93-17-5.

Miss. Code Ann. § 93-17-7 (Rev. 2018) (emphasis added).

¶29. The Legislature also deleted subsection (2) of Section 93-15-103. *See* H.B. 1240, Reg. Sess., 2016 Miss. Laws ch. 431, § 3. And, the "[v]oluntary termination of parental rights by voluntary release is [now] governed by Section 93-15-111." Miss. Code Ann. § 93-15-107(2) (Rev. 2018). The controlling statute now reads:

(1) The court *may* accept the parent's written voluntary release if it meets the following minimum requirements:

(a) Is signed under oath and dated at least seventy-two (72) hours after the birth of the child;

(b) States the parent's full name, the relationship of the parent to the child, and the parent's address;

10

(c) States the child's full name, date of birth, time of birth if known, and place of birth as indicated on the birth certificate;

(d) Identifies the governmental agency or home to which the child has been surrendered, if any;

(e) States the parent's consent to adoption of the child and waiver of service of process for any future adoption proceedings;

(f) Acknowledges that the termination of the parent's parental rights and that the subsequent adoption of the child may significantly affect, or even eliminate, the parent's right to inherit from the child under the laws of Descent and Distribution (Chapter 1, Title 91, Mississippi Code of 1972);

(g) Acknowledges that all provisions of the written voluntary release were entered into knowingly, intelligently, and voluntarily; and

(h) Acknowledges that the parent is entitled to consult an attorney regarding the parent's parental rights.

(2) *The court's order accepting the parent's written voluntary release terminates all of the parent's parental rights to the child*, including, but not limited to, the parental right to control or withhold consent to an adoption. If the court does not accept the parent's written voluntary release, then any interested person, or any agency, institution or person holding custody of the child, may commence involuntary termination of parental rights proceedings under Section 93-15-107.

Miss. Code Ann. § 93-15-111 (Rev. 2018) (emphasis added).

¶30.    "If a statute is plain and unambiguous, the Court will employ its plain meaning." *McDaniel v. Cochran*, 158 So. 3d 992, 996 (Miss. 2014) (citing *Miss. Methodist Hosp. and Rehab. Ctr., Inc. v. Miss. Div. of Medicaid*, 21 So. 3d 600, 607 (Miss. 2009), *abrogated by King v. Miss. Mil. Dep't*, 245 So. 3d 404 (Miss. 2018)). The plain language within the Legislature's revisions reveals that termination of parental rights via a voluntary release follows only after a court's acceptance of the voluntary release.

11

¶31. Unlike the prior statute and the precedent from that statute, which only required the parent to execute a voluntary release, the new statutory language includes a specific requirement that termination requires a court's acceptance. Therefore, the question now before this Court becomes whether the chancellor accepted Kim's surrender.

¶32. At the July 27, 2019 meeting, seven months after Amy was born, Kim signed the surrender. And the surrender was promptly submitted to the chancellor. Then, on July 30, 2019, the chancellor entered an order that granted temporary custody to Amanda. This order was premised on the finding that "[t]he surrender of parental rights form signed by the mother complies with all applicable statutes, and is accepted by the Court pursuant to Miss. Code Ann. § 93-17-111."

¶33. Here, Amanda relies on this acceptance language in the chancellor's July 30 order. Amanda claims that the chancellor found that the surrender complied with the applicable statutes. As a result, Amanda argues that Kim's parental rights were terminated by the July 30 order and that Kim voluntarily waived notice of adoption. Amanda asks this Court to conclude that Kim lost her standing and had no right to object to the adoption.

¶34. In response, Kim relies on the fact that in the February 24, 2020 order, the chancellor rescinded the acceptance language in the June 30, 2019 order. The February 24, 2020 order followed Kim's withdrawal of her consent and request for temporary relief. In the February 24, 2020 order, the chancellor stated that the court "has made no finding on the acceptance or validity of the Surrender of Parental Rights and Consent to adoption signed by [Kim]. Additionally, the Withdrawal of Consent to Voluntary Surrender of Parental Rights and

Adoption remains under advisement with this Court."

¶35. Kim also contends that, on March 2, 2020, the chancellor repeated its earlier finding in the opinion and order on withdrawal of consent and surrender and ruled:

> Indeed, [Kim]'s signed Surrender does indeed comport with all of the legal requirements of Section 93-15-111, including acknowledgments that rights of inheritance could be effected and/or eliminated, and that she was entitled to consult with her own attorney and even after that she could ask the judge to appoint an attorney in a contested case.

The chancellor, however, reiterated that it dissolved the paragraph accepting the surrender in the earlier February order and that it "has made no finding on the acceptance or validity of the *Surrender of Parental Rights and Consent to Adoption* signed by Ms. [Kim]." While neither Davis nor Amanda intentionally forced Kim to give up Amy in any way, the chancellor stated that Kim "was *perhaps* factually under duress due to her economic situation and even fear of prosecution." (Emphasis added.)

¶36. Our standard of review is whether the chancellor committed manifest error. "The scope of review in domestic cases is limited by the substantial evidence/manifest error rule. This Court will not disturb a chancellor's findings unless they were manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal standard." *Stewart v. Stewart*, 309 So. 3d 44, 69 (Miss. 2020) (internal quotation marks omitted) (quoting *Lee v. Lee*, 154 So. 3d 904, 906 (Miss. Ct. App. 2014)).

¶37. We must recognize that in the chancellor's July 30 order granting temporary custody, the chancellor specifically stated that "[t]he surrender of parental rights form signed by the mother complies with all applicable statutes, and is accepted by the Court pursuant to Miss.

Code Ann. § 93-15-111."

¶38. Likewise, we must recognize that almost a month later, on August 21, 2019, the chancellor entered a fiat for a hearing on October 2, 2019, on the subject of termination of parental rights and adoption. No final judgment of adoption had been entered at that point. Moreover, shortly thereafter, on August 26, 2019, Kim filed her withdrawal of parental consent.

¶39. The question before this Court is whether the chancellor's statement in her July 30 order qualified as a valid, final acceptance of Kim's surrender.

¶40. This Court finds that the chancellor had not accepted Kim's surrender in the July 30 order. The chancellor entered a fiat for a hearing on the matter of termination of parental rights, and the chancellor dissolved this language in her February 24, 2020 motion for temporary relief. The chancellor reiterated the dissolution in her March 2, 2020 opinion, which allowed Kim to withdraw her consent. In that opinion, the chancellor addressed the problematic language by the provided account for her original decision to grant the temporary order:

> While not technically incorrect, it is not this Court's usual practice to enter such an Order without the parties first having appeared before the Court, but the Court was attempting to be accommodating in what was then an uncontested matter. It was the Court's understanding that time was of the essence because Ms. [Amanda] was essentially required to remain in the state of Mississippi until an Order was entered that would allow her to return to Georgia with the child, and that all parties consented to this arrangement. Indeed, [Kim]'s signed Surrender does indeed comport with all of the legal requirements of Section 93-15-111, including acknowledgments that rights of inheritance could be effected and/or eliminated, and that she was entitled to consult with her own attorney and even that she could ask the judge to appoint an attorney in a contested case.

14

¶41. Consequently, we admit that the chancellor's acceptance language in the June 30, 2019 order was problematic. Nevertheless, Section 93-15-111 requires the court to accept the "parent's written voluntary release [which] terminates all of the parent's parental rights to the child, including, but not limited to, the parental right to control or withhold consent to an adoption," and the scheduled fiat hearing to terminate Kim's parental rights coupled with the court's express dissolution fails to satisfy the statutorily required acceptance. Therefore, this Court finds that there is no error in the chancellor's decision that Kim's parental rights had not been officially terminated before the withdrawal was filed.

¶42. Therefore, we affirm the chancellor's determination that Kim withdrew her surrender before it was accepted. As a result, we find that the chancellor's decision should be affirmed and that the remaining issues raised are moot.

¶43. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM AND ISHEE, JJ., CONCUR. CHAMBERLIN, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED IN PART BY COLEMAN AND MAXWELL, JJ.**

**CHAMBERLIN, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶44. It has long been the law in the state of Mississippi that a "written voluntary release, or consent by the parent, terminates the parental rights and thereafter, no objection to the adoption from the natural parent may be sustained." *Grafe v. Olds*, 556 So. 2d 690, 695-96 (Miss. 1990) (citations omitted). This built upon earlier caselaw which held that "[a]bsent a showing . . . [of] fraud, duress, or undue influence by clear and convincing evidence, surrenders executed [following the proper statute] are irrevocable." *C.C.I. v. Nat. Parents*,

398 So. 2d 220, 226 (Miss. 1981).

¶45. With the adoption of the Mississippi Termination of Parental Rights Law in 2016, the legislature added an extra layer of protection for the natural parents. Pursuant to Section 93-15-111(1), as amended, the court *may* accept the surrender if it meets certain minimum requirements. Miss. Code Ann. § 93-15-111(1) (Rev. 2018). Section (2) of the same statute notes that the acceptance by the court terminates all of the parent's parental rights to the child. Miss. Code Ann. § 93-15-111(2) (Rev. 2018). Nothing in this protective language changes the irrevocability of the surrender, as set forth in *Grafe* and *C.C.I.*, once accepted.

¶46. Our first inquiry, and my first disagreement with the majority, is whether the surrender was accepted. I would submit that it clearly was accepted. I base my certainty that the surrender was accepted on the language in the court's order that states, "the surrender of parental right form is accepted by the Court pursuant to Miss. Code Ann. § 93-15-111." Notably, this is not loose language subject to interpretation but, rather, an acknowledgment of acceptance under the proper statute. This is further reiterated in the court's Opinion and Order on Withdrawal of Consent and Surrender in which the court states, "Indeed, [Kim]'s signed Surrender does indeed comport with all legal requirements of Section 93-15-111 . . . ." The majority dismisses the "acceptance" language in the June 30 order as being merely "problematic." Maj. Op. ¶ 41.

¶47. The majority posits that the setting of a subsequent hearing on the subject of termination of parental rights constitutes proof that the surrender had not been accepted. Maj. Op. ¶ 40. I believe this logic is misplaced as the court was still going to require a hearing as

16

to the finalization of the adoption including adjudicating the rights of the natural father who had not signed a surrender.

¶48.   The question is not whether the surrender was accepted.  It clearly was.  I would submit that the proper question is whether the trial court was allowed to withdraw acceptance of the surrender.  This is different than a determination of whether the parent can meet the applicable burden of proof, by clear and convincing evidence, to withdraw the surrender in a contested proceeding.

¶49.   The problem in the case *sub judice* is that the court's order is couched in terms of allowing withdrawal of the surrender due to duress.  However, the duress recognized by the trial court is not duress that is legally recognized as relieving a party from their obligations. "Duress strikes at whether a party actually consented to a contract."  ***Ladner v. O'Neill (In re Estate of Davis)***, 42 So. 3d 520, 525 (Miss. 2010) (citing ***Duckworth v. Allis-Chalmers Mfg. Co.***, 150 So. 2d 163, 165 (1963)).  "A dominant party must conduct himself or herself in a manner that overrides the volition of the weaker party."  ***Id.*** (citing ***Duckworth***, 150 So. 2d at 165).  "[A] deprivation of a party's free exercise of his or her own will constitutes duress."  ***Id.*** (citing ***Duckworth***, 150 So. 2d at 165).  In ***Askew v. Askew***, 699 So. 2d 515, 518 (Miss. 1997), the Court further reiterated that, in the context of a divorce, normal stress is not sufficient to relieve one of their obligations.  *See* ***Estate of Davis***, 42 So. 3d at 525 (citing ***Askew***, 699 So. 2d at 518).

¶50.   The trial court made clear that there was no "bad actor" in this case.  The court acknowledged that the requirements of the statute were met with specificity.  The court

stated, in its Opinion and Order on Withdrawal of Consent and Surrender, that there was no "fraud, duress, or undue influence on the part of the Petitioner or counsel for the Petitioner[.]" Simply stated, the natural mother has shown nothing that would even remotely constitute legally recognized duress that would allow withdrawal of her prior surrender.

¶51.     As stated above, the real question is not whether the court should allow a contested withdrawal of the surrender but, rather, whether the trial court can withdraw acceptance of the prior surrender. Therein lies the rub. The Court's Order Granting Temporary Custody, which contained the acceptance of the surrender, did not adjudicate all claims of all parties in this dispute. It is, therefore, an interlocutory order. Miss. R. Civ. P. 54(b).[2] "[R]econsideration of interlocutory orders proceeds pursuant to Rule 54(b)." *Maness v. K&A Enters. of Miss. LLC*, 250 So. 3d 402, 415 (Miss. 2018). As such, "the trial court is free to reconsider and reverse its decision *for any reason it deems sufficient*, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *C.f. Cabral v. Brennan*, 853 F.3d 763, 766 n.3 (5th Cir. 2017) (emphasis added) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990) (citing Fed. R. Civ. P. 54(b)), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994)). That appears to be what the court has actually done here.

---

[2] The applicability of the Mississippi Rules of Civil Procedure are of course limited in certain cases such as in the case *sub judice* that involve, among other proceedings, termination of parental rights, but only to the extent the Rules conflict with procedural provisions within the enumerated statutes and proceedings. Miss. R. Civ. P. 81(a), (a)(9), (d)(1), (g). Since Mississippi Code Section 93-15-111(1) does not contain procedural terms in conflict with Rule 54(b), Rule 54(b) controls. Miss. R. Civ. P. 81(a), (a)(9), (d)(1), (g); 54(b); Miss. Code Ann. § 93-15-111 (Rev. 2018).

After reconsideration of an interlocutory order this Court is, of course, tasked with judging the ultimate decision under the appropriate standard of review. However, the permissive language "may" in reference to the chancery court's discretion for accepting a voluntary surrender contained in Section 93-15-111 limits our ability in that regard in this case given the applicable abuse of discretion standard of review. Miss. Code Ann. § 93-15-111(1) (Rev. 2018); *see* Maj. Op. ¶ 22. Therefore, the trial court must be affirmed.

¶52. One final note regarding the withdrawal of a surrender, whether interlocutory in nature or otherwise: in *Grafe* we stated that the "revocability of the surrender of a child and consent for another to adopt a child is not to be decided upon rigid or technical rules. Such a decision must be made upon sound judicial discretion." *Grafe*, 556 So. 2d at 694 (quoting *C.C.I.*, 398 So. 2d at 226). It further states that "we do not mean to pronounce that consent may never be withdrawn. We emphasize that such a determination must be made on a case-by-case basis in timely fashion without unnecessary delay in the proceedings, *always keeping in mind that the best interest of the child is paramount.*" *Id.* at 695-96 (emphasis added). I am respectful and mindful of the trial court's ability to execute this function, and I acknowledge that all matters before the trial judge may not be before us in the record today. But in this case, the natural mother has twice attempted to place her child up for adoption, once before birth and once again seven months later, only to apparently simply change her mind on each occasion. I do not question the motives of the natural mother in determining adoption to be the best option to better her child's life. I do, however, question whether allowing the repeated change of heart comports with our polestar consideration of determining the best

19

interest *of the child*.

¶53.    As the order in question was interlocutory in nature and, therefore, subject to reconsideration by the trial judge, and because the statute in question utilizes the permissive "may" language, I concur in part and in result.

**COLEMAN AND MAXWELL, JJ., JOIN THIS OPINION IN PART.**